L. WILKOWSKI, plaintiff in error, *vs.* ABRAHAM HALLE, defendant in error.

1. All applications for continuances, are addressed to the sound legal discretion of the Court, and if not expressly provided for, shall be granted or refused, as the ends of justice may require.

2. A Notary Public, who is an attorney at law, cannot qualify a party to an affidavit for an attachment, and take the bond, and issue the attachment, in a case where he is employed.

Attachment and claim. Tried before Judge COLE. Bibb Superior Court. November Term, 1867.

Brummer was a merchant in Macon. He owed Halle $3,500 00, and he came to Macon to collect his money. Soon afterwards, Wilkowski, of Wilkowski & Co., of Cincinnati, Ohio, came also, and in consideration of the settlement of claims against Brummer, held by his firm, and Lock-

hart & Ireland, of Cincinnati, and others whom he represented, he procured Brummer to sell out to him, his entire stock of goods, and took possession of the same.

Brummer then left Macon. Thereupon Halle employed Washington Poe and Henry C. Day, attorneys at law, and partners under the firm name and style of W. Poe, to collect his said claim. He sued out an attachment against Brummer. The affidavit was made before said Day, as a Notary Public, and he witnessed the bond, and issued the attachment. The stock of goods, in Wilkowski's possession, was levied on, and he claimed them.

Before the trial, Halle had procured the testimony of certain persons, to the effect that the claims held by Wilkowski against Brummer were spurious, and gotten up as a cover for a fraudulent transfer of said goods, to him by Brummer, so as to defeat Halle. When the cause was reached, the claimant's attorneys moved to continue the case, in order to get the testimony of Lockhart & Ireland, to show that Brummer did owe them, and that Wilkowski did represent them in collecting their claims. It was shown that Cincinnati, Ohio, was their residence, that about two weeks before Court, interrogations were sent there to them, that upon being advised that they were in New York, the claimant's attorneys ordered the interrogatories sent to New York, or held for the return of the witnesses to Cincinnati, which was the most expeditious, etc.

It being conceded, that Cincinnati was more than five hundred miles from Macon, and the showing being objected to, because the interrogatories were taken out so late, the Court held that the interrogatories should have been taken out according to the rule of Court, three months before Court, and refused the continuance. When the jury had been empannelled, claimant's attorneys moved to dismiss the attachment, because the same was issued by said Day, one of the plaintiff's attorneys. The Court overruled the objection, and ordered the case to proceed. Testimony *pro* and *con* was introduced, touching the *bona fides* of the sale to claim-

ant, and the jury found the property subject to the attachment.

Claimant assigns as error, the refusal of said continuance, and the refusal to dismiss said attachment.

LYON & DEGRAFFENREID, for plaintiffs in error.

W. POE, for defendants in error. ·

WALKER, J.

1. All applications for continuances, are addressed to the sound legal, discretion of the Court, and if not expressly provided for, shall be granted or refused, as the ends of justice may require. Code, sec. 3480. In this case, there was no such abuse of the discretion of the Court below, as to require this Court to control the exercise of that discretion.

2. Was the process of attachment founded upon an affidavit taken by a Notary Public, employed in the cause, and issued by him, void? By the old law, a Notary Public was not empowered to issue an attachment. This power was conferred on him by the Act of March 4th, 1856; pamp. Acts, p. 25; and this act was embodied in the Code, sec. 3200. Section 2201 provides that the party seeking the attachment, before the same issues, shall give bond, with good security, conditioned to pay the defendant all damages that he may sustain, and all costs that may be incurred by him, in the event that plaintiff shall fail to recover in said case; "which bond, it shall be the duty of the magistrate or other officer before whom the affidavit is made, to take."

Shall the attorney of the plaintiff take this bond, which the law provides for the defendant's security, against a wrongful issuing of the attachment? Shall the plaintiff's attorney be the judge as to the sufficiency of the bond, to protect the opposite party and as to the solvency of the surety? Is not this, at least, a *quasi* judicial proceeding? The officer, taking the affidavit, is in duty bound to take the bond, to decide upon its sufficiency, its legality, and its solvency. Does not this duty come within the prohibitions of sec. 193,

Wilkowski *vs.* Halle.

Rev. Code, which says: "No judge or justice of any Court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature, or commissioner, can sit in any cause or proceeding, in which he is pecuniarily interested, or related to either party, within the fourth degree of consanguinity, or affinity, nor in which he has been counsel, without the consent of all the parties in interest." Is not the taking of the affidavit of the plaintiff, and bond to indemnify the defendant against damaged and costs, "a proceeding," in which the attorney for the plaintiff, in this case, "sits?" He decides upon these things.

Again, by sec. 443, Rev. Code, attorneys have certain powers therein specified, "but they cannot take affidavits required of their clients, unless specially permitted by law." Now, the technical meaning of the phrase, "take affidavits," refers to the certifying or qualifying parties to affidavits. Upon first reading the clause quoted, I was inclined to think the words were not used in their strict technical sense, but intended to say, that attorneys could *make* affidavits for their clients only in those cases specially permitted by law. Upon reflection, I am rather inclined to think, with my brethren, that the words are used with strict legal accuracy, and intended to reach just such a case as this; more especially when taken in connection with the general rules of the law upon the subject. Mr. Tidd says: "By the general practice of all the Courts, affidavits sworn before the attorney or solicitor in the cause, cannot be read. And this practice extends to affidavits taken before attorneys, as commissioners, in causes wherein they are concerned for the parties on whose behalf such affidavits are made." 1 Tidd's Prac. 494. In the case of the King vs. Wallace, 3 T. R., 403, it is held that the Court (of Kings Bench) will, in no case, issue an attachment against a party at the suit of another, where the affidavits, on which the motion is founded, are sworn before the agent of the prosecutor. In the case, (C. P.,) of Hopkinson vs. Buckley, 8 Taunton's R., p. 74, "Vaughan, Serg't, showed cause against a rule, which had been obtained by Hullock, Serg't, and insisted that it must be discharged

with costs, as all the affidavits of the party, which were the foundation of the rule, had been sworn before his own attorney in the cause. The Court observed, that it was extremely wrong for the attorneys in a cause, to act as commissioners in taking the affidavits of their clients, and gave judgment that the rule be discharged with costs." So in the case of Jenkins vs. Mason, 3 Moore's Rep., in the same Court it was held that an affidavit, stating that the defendant had been discharged under an insolvent debtor's act, cannot be sworn before his own attorney in the cause. The rule is the same in Chancery. In 3 Dan., Ch. Pr. 234, it is said that, "It is to be observed, also, that the master extraordinary, before whom the affidavit is sworn, must not be a solicitor in the cause." "In the matter of Thomas Hogan, a lunatic, August 9th, 1754, the petitioner had taken all the affidavits before himself, notwithstanding he had been solicitor, throughout, in the cause. Lord Chancellor Hardwick : "If I had known this at the time, I would not have suffered the affidavits to be read. At common law, it is always objected to, and discountenanced, and equally so in equity, from the inconvenience that would arise if such a practice was suffered ; for this and other reasons, the petition was dismissed with costs to come out of the pocket of the solicitor who thus very improperly took the affidavits." The same rule obtains in New York. "Skinner was about to read an affidavit in support of a motion in this cause, when Wolworth objected, that the affidavit had been taken before the attorney for the plaintiff, who was commmissioner for taking affidavits, to be read in this Court. *Per Curiam*: "The practice of the Court of K. B. is not to allow an affidavit, taken before the attorney in the cause, to be read. It is a very fit and proper rule, which we shall, therefore, adopt, as the practice here." Taylor vs. Hatch, 12, J. R., 340. In Bac., Abr., 147, (Bouv. Ed.,) it is said : "Affidavits, taken before a person who is a solicitor in the cause, are not allowed to be read either at law or in equity; nor can affidavits be received which are sworn before the attorney of the party or his partner."

Wilkowski *vs.* Halle.

These authorities seem very clear and directly in point. Read in the light thus reflected, we think the Code excludes a Notary Public from taking the affidavit of his client, and issuing the attachment in a case where he is employed as an attorney at law.

This Court has applied the same principle to the taking of depositions. In Tillinghast *et al*, vs, Walton, 5 Georgia Report, 335, it is decided that if the relation of the Commissioner to either party in the cause is such as to warrant the inference that he may act under a bias to either party he is not competent to act as 'Commissioner, and excluded testimony taken by the Clerk of one of the counsel in the cause. In delivering the opinion, page 340, Judge Nisbet says: "The policy which excludes a solicitor of a party is founded in a just apprehension, that from his relationship to him he will not deal fairly by the adverse party. This policy ought also to exclude his Clerk. Nay, farther, it has been held that if the clerk of a Solicitor in the cause has been employed as clerk to the Commissioner, the depositions shall be suppressed." Citing Newton vs. Foote, 2 Dick., 793; 2 Ch. R., 393; S. C. Cook vs. Wilson, 4 Mad. R., 380. This case was approved in Glanton vs. Griggs, 5 Georgia, 429, *et seq*, and on page 433 it is said the Commsssioners like jurors should be free from all impressions and influences. For the time being they discharge judicial functions. They should not be under the power, nor owe suit or service to either party. The same principle will exclude a Notary Public from taking the affidavit and bond and issuing an attachment in a case where he is employed. Other reasons connected with public policy might be given, but we forbear. We think, both upon principle and authority, that the attorney, who may be a Notary Public, is not authorized to take the affidavit and bond of his client and issue the attachment in a case where he is employed; and that the Court erred in not sustaining the objection made to the attachment on this account.

Judgment reversed.