### 617. McLENDON *v.* DUNLAP HARDWARE COMPANY.

1. In a claim case the tax digest, showing the returns of the defendant in execution before the pendency of litigation, is admissible in evidence as an admission of the defendant. It is competent also to show that the claimant did not make any return of property for taxation during the year in which the judgment was rendered.

2. It is error to instruct the jury in a claim case that property returned in the name of a taxpayer is presumptively his property. The return is a circumstance of more or less probative value, to be considered by the jury within limitation above indicated; but the declaration of the party making the returns raises no presumption of title.

3. The court gave the following charge requested by the plaintiff in fi. fa.: "If the jury believe, from the evidence, that the twenty-five acres of cotton, one half acre of potatoes, field peas and groundpeas, thirty acres of hay, eighteen hundred pounds of seed cotton gathered, belonged to J. S. McLendon and other parties jointly, then he could not sustain his claim, and it would be your duty to find that much of said property subject to the plaintiff's fi. fa." *Held*, that this instruction was erroneous. (1) It did not state a correct principle of law. (2) It deprived the claimant of the benefit of his contention that he and his cropper made the said agricultural products and that they were undivided at the date of the levy.

4. The verdict is not supported by any evidence, and is set aside as contrary to law.

Claim, from city court of Sylvester—Judge Park. May 27, 1907.

Argued October 30,—Decided December 9, 1907.

*J. H. Tipton, Mark Tison,* for plaintiff in error.

*Hardeman & Jones, Perry & Williamson,* contra.

HILL, C. J.　An execution, issued from the city court of Sylves-ter, dated March 30, 1906, in favor of the Dunlap Hardware Com-pany, against J. A. McLendon, was levied September 21, 1906, upon the following described property, as the property of the de-fendant in fi. fa., to wit: "twenty-five acres of corn in the field, not gathered; twenty-five acres of cotton in the field, not gathered; one half acre of potatoes and field peas and groundpeas in the field, not gathered; thirty acres, more or less, in hay, with peas; one black horse-mule eight years old, name 'Sam;' one black mare-mule, ten years old, name 'Cedar;' eighteen hundred pounds seed cotton, more or less, gathered in the house."　On September 24, 1906, J. S. McLendon filed a claim to all of the property levied upon as above described.　On the trial of the claim case the plain-tiff introduced the execution in his favor and proved by the sheriff that when he made the levy he found both the defendant in fi. fa. and the claimant in the house located on the land where the prop-erty was, but that he could not say which one was in possession of the property or was in charge of the place upon which it was lo-cated, and that apparently the one was no more in possession of the place and the property than the other.　The claimant there-upon, without contesting the sufficiency of this evidence to shift the burden, assumed the burden, and in his own behalf testified substantially as follows: that the defendant in fi. fa., J. A. Mc-Lendon, was his brother, and that he had rented the land from him for the year in which the levy was made, and that the crops which were levied upon were made by him and his cropper for that year; that his brother had no interest in the crops as land-lord; that his cropper, who planted and cultivated the crop, and who was not his brother, did have an interest in the crop, and there had been no division between him and his cropper as to the crops that were ungathered in the field, and that this applied also to the portion of the crops that was in the house; that both of the mules levied upon were his individual property, in which the defendant in fi. fa. had no interest; that he lived on the place where these crops were made, and that his brother had been with

him for about two months before the levy, but before that time he had been living in Oakfield; that he, the claimant, had been living on this farm for two years prior to the levy; that during the year 1905 he worked for his brother for wages at $50 per month; that he "overseered the farm," but that for the year 1906 he rented the land from his brother and was his tenant; that he himself bought both of the mules levied upon, one from the Cedar Company and the other from his brother the first week in January, 1906, paying for him $100; that the mules in question were paid for by him with his own money; that his brother owed him a large amount of money which he loaned him in 1905, and that the crops under levy were made entirely by him and his cropper, and his brother had no interest in them whatever; that his taxes were given in by his brother for 1906, at his request, as his brother was staying at Oakfield while he was living down on the farm and did not know when the tax-receiver or assessor would be at Oakfield. The tax digest for the year 1906 was introduced by the plaintiff in fi. fa., over the objection of the claimant, and it showed that for the year 1906 J. A. McLendon, the defendant in fi. fa., paid taxes on merchandise $3,000, on horses and mules $200, and on carriages $25. The name of the claimant, J. S. McLendon, did not appear upon the tax digest for that year.

The jury found that the property was subject to the execution; and the claimant filed a motion for a new trial, on the general grounds and on the following special grounds: (1) Because the court erred in admitting the tax digest and in reading to the jury, in connection with his ruling admitting the digest, the oath prescribed by the Political Code, §834, to be made by the taxpayer, the claimant insisting that the tax digest was not admissible for the purpose of showing title in the party making returns, and that reading the oath of the taxpayer had the effect to emphasize the force of the evidence and unduly impress the jury with the probative value of tax returns. (2) Because the court erred in charging the jury as follows: "In regard to the tax books, all the evidence introduced to you from the tax books of this county is prima facie evidence that the property appearing opposite the party's name belongs to that party; but this presumption may be rebutted by proof. You look to see if this property described in these tax books is the property under levy. You look to all of

the testimony in the case, and see if the property is the property of J. S. McLendon, or J. A. McLendon, and determine that under the same rules that I have given you in charge." It is alleged that this was error, because there was no evidence to support or authorize this charge, and because the tax digest was introduced to show the return of property by J. A. McLendon; that this return could not include any of the property in controversy unless it was the mules, and there was no evidence to show that the mules returned were the same as those under levy; and because this charge had the effect to cause a finding for the plaintiff, when the verdict was demanded for the claimant. (3) Because the court charged the jury as follows: "I am requested to charge you, and I give you in charge, that if the jury believe, from the evidence, that the twenty-five acres of cotton, one half acre of potatoes, field peas and groundpeas, thirty acres of hay, eighteen hundred pounds of seed cotton gathered, belonged to J. S. McLendon and other parties jointly, then he could not sustain his claim, and it would be your duty to find that much of said property subject to the plaintiff's fi. fa." It is insisted, that this charge was contrary to law, and that exactly the contrary was true, under the facts as stated; and that this charge deprived the claimant of the benefit of his contention that all of the crops belonged to him as landlord, subject to his cropper's rights therein, as the crops had not been divided between them, and also of his contention that his brother, J. A. McLendon, had no interest in the crops whatever; that this charge was therefore material error and operated against the claimant. The other grounds in the amended motion simply particularize the general ground that the verdict was without any evidence to support it, and was therefore contrary to law. We will first take up such of the special exceptions as we consider material.

1. The tax digest was admissible in evidence for two purposes: first, as an admission of the defendant in fi. fa. before the pendency of litigation (Civil Code, §5189; *Tolleson* v. *Posey*, 32 *Ga.* 372; *Smith* v. *Haire*, 58 *Ga.* 446; *Ivey* v. *Colquitt*, 63 *Ga.* 509; *Ivey* v. *Cowart*, 124 *Ga.* 159 (52 S. E. 436, 110 Am. St. R. 160); also for the purpose of showing that the claimant failed to make any return of taxable property for the year in which he claimed to be the owner of the personal property in controversy. *McCrory* v.

*Manes,* 47 *Ga.* 90; *Lynch* v. *Lively,* 32 *Ga.* 575; 10 Enc. Ev. 728, note 55. In this case, however, this evidence had little if any probative value. The returns did not show that they included any of the personal property levied upon, except, probably, the mules; and as to agricultural products, the court will judicially know that tax returns are usually made in the spring or summer and before such products are in a physical condition to be treated as property; and the evidence in this case shows that all of these agricultural products were still undivided between the claimant and his cropper at the time of the levy, which was subsequent to the tax returns; and the positive and undisputed testimony of the claimant showed that he had requested the defendant in fi. fa., who was his brother and living in town, to make his tax returns, and that he, the claimant, had paid the tax execution issued against the defendant in fi. fa. for the taxes of 1906. In admitting the tax returns as evidence, we do not think it was error for the court to read or cause to be read to the jury the oath prescribed for the taxpayer by the Political Code, §834. This oath was a part of the returns, and was necessary, to make the returns complete or of any probative value.

2. The charge of the court objected to in the 2d special ground of the motion for a new trial, we think, is error. Tax returns, in certain cases, are a circumstance of more or less probative value, but the declaration in them as to title raises no presumption that what is therein stated is the truth.

3. The charge of the court objected to in the 3d special ground of the motion for a new trial (which was requested by the plaintiff in fi. fa.), we think, was erroneous for several reasons. If the jury believed, from the evidence, that, at the time of the judgment upon which the execution was issued, the property levied upon belonged to the claimant and any other persons jointly, neither of the other persons being the defendant in fi. fa., the property would not be subject to the fi. fa., and it would have been the duty of the jury to find a verdict in behalf of the claimant; and if the jury believed that the property, or at least a large part of it, belonged to the claimant and his cropper who had made it, but that it had not, at the time of the levy, been divided between them, it would not have been subject to the execution. According to the evidence of the claimant, this was the truth, but under this

charge of the court the claimant was deprived of the benefit of this contention. In short, the property levied upon was not subject to the execution if, at the time of the judgment, it did not belong to the defendant or some one holding under him since the date of the judgment; and if, under the evidence, which was not disputed, the property belonged to the claimant and his cropper at the date of the judgment, it was not subject to the execution.

4. Probably it was unnecessary to pass upon any of the special exceptions of error, as we are clear, from an analytical examination of the testimony, that the verdict for the plaintiff, finding the property subject, was wholly unsupported by the evidence. Even possession in the defendant in fi. fa. at the time of the levy, which gives rise to the presumption of ownership, was not sufficiently shown. The sheriff testified that he did not know whether the claimant or the defendant was in possession of the property when he made the levy; and the undisputed evidence of the claimant is, that he and his cropper had made the crop levied upon for that year on the place which he had rented from his brother; that this crop was not divided at the time of the levy between him and his cropper, and that the defendant in fi. fa. had no interest whatever in any part of the crop, and that the other property levied upon had been bought by him and paid for, and all of the property was in his exclusive possession at the time of the levy, and the defendant in fi. fa. had been staying with him for only two months, but lived at Oakfield. The inference which may have arisen from the tax returns, as before stated, was of no probative value; first, because it was fully met and overcome by direct and undisputed testimony; and secondly, because the property levied upon, except the two mules, was certainly not included in the returns at all, and it is doubtful if the two mules were included. While at all times reluctant to interfere with the verdict of the jury, we feel constrained to do so where we are clearly of the opinion that, so far as the record shows, the verdict finds no support whatever in the facts. We are less reluctant to set aside the verdict in this case because, under the undisputed evidence, the greater portion of the property levied upon was the product of the brawn and muscle of the claimant and his cropper, earned in the sweat of their brows.

*Judgment reversed.*