BAHNSEN, veterinarian, *v.* YOUNG *et al.,* commissioners;
*et vice versa.*

ATKINSON, J. 1. While mandamus will lie to compel performance of specific official acts, where the duty to discharge them is clear, it is not an appropriate remedy to compel a general course of official conduct for a long series of continuous acts to be performed under varying conditions. *Jackson* v. *Cochran,* 134 *Ga.* 396 (67 S. E. 825, 20 Ann. Cas. 219, and cases cited in note); State *v.* Brewer, 39 Wash. 65 (80 Pac. 1001, 109 Am. St. R. 858, 4 Ann. Cas. 197, and cases cited in note); People *v.* Busse, 238 Ill. 593 (87 N. E. 840, 28 L. R. A. (N. S.) 246, and cases cited in note); 18 R. C. L. 119, § 33. Applying the foregoing principle, the decision of the trial court was not erroneous in so far as it may be construed as denying the writ of mandamus to compel the county commissioners of Brooks County to comply with the provisions of the tick-eradication law, and to "construct and maintain such number of dipping-vats as may be fixed by the State veterinarian or his authority and provide the proper chemicals and other materials necessary to be used in the systematic work of tick-eradication in Brooks County, and to provide and pay the salaries of the necessary number of inspectors or agents to assist in this work, and to appoint said inspectors or agents subject to the approval of the State veterinarian, and to fix such salaries of said inspectors and agents as shall be sufficient to insure the employment of competent men, and to do such other things as shall be necessary, by law, to carry on the work of tick-eradication in the County of Brooks."

2. For reasons indicated above, the defendants under the facts of this case were entitled to a judgment denying mandamus; and the court erred in not rendering such judgment.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill of exceptions. Beck, P. J., and Gilbert, J., dissent. The other Justices concur.*

Nos. 4206, 4207. NOVEMBER 15, 1924.

Petition for mandamus. Before Judge W. E. Thomas. Brooks superior court. January 19, 1924.

On December 18, 1923, Peter F. Bahnsen as State veterinarian instituted mandamus proceedings against E. J. Young and others as commissioners of Brooks County and ex-officio commissioners of roads and revenues of that county. The petition alleged that under the act of the General Assembly of 1918, providing for tick-eradication, the defendants were charged with the duty of constructing such number of dipping-vats as may be fixed by petitioner, and providing the proper chemicals and other materials necessary to be used in the work of tick-eradication in that county; also that the defendants should provide and pay the salaries of the necessary number of local county inspectors or agents to assist in the work,

who should be appointed by the defendants subject to the approval of petitioner, and who should be commissioned by him; that the defendants have heretofore provided and paid the salaries of the necessary number of local county inspectors who have been assisting in the work of tick-eradication in Brooks County; but that on November 7, 1923, at a regular meeting the board of commissioners adopted a resolution which was spread upon their minutes, as follows: "Whereas the Board of County Commissioners of Roads and Revenues of Brooks County was assured eight years ago that Brooks County could be made tick free by dipping one year and not more than two, and whereas the said Board of County Commissioners has co-operated to the full extent of its authority in appointing and paying inspectors and construction of dipping-vats and furnishing all money required under the dipping authorities, and whereas, after continuous dipping covering a period of eight years, no relief from the cattle-tick is apparent and the end of the dipping campaign not in sight, and whereas, at a citizens mass-meeting composed of cattle-owners held to-day, a resolution praying for relief and directed to the county board was unanimously adopted: Therefore be it resolved that further co-operation with the present system be withdrawn, and no funds be paid out by this body for this purpose after December 31st, 1923."

It is alleged that the above resolution is an official act and declaration, and is now in effect and has not been modified or repealed; and that on December 31st, 1923, tick-eradication in Brooks County will cease by reason of the fact that the county authorities will not provide funds nor pay salaries to nor employ county agents or inspectors to assist in said work as provided by law. The prayer is that the court grant a writ of mandamus to compel the defendants to comply with the provisions of the tick-eradication law, and to compel them "to construct and maintain such number of dipping-vats as may be fixed by the State veterinarian or his authority, and provide the proper chemicals, and other materials necessary to be used in the systematic work of tick-eradication in Brooks County, and to provide and pay the salaries of the necessary number of inspectors or agents to assist in this work, and to appoint said inspectors or agents subject to the approval of the State veterinarian, and to fix such salaries of said inspectors and agents as shall be sufficient to insure the employment

of competent men, and to do such other things as shall be necessary, by law, to carry on the work of tick-eradication in the County of Brooks." On presentation of the petition the judge granted a mandamus nisi. The defendants filed a demurrer to the petition, on the grounds: (a) That no facts were alleged which would authorize the grant of mandamus. (b) That it does not appear that the defendants failed, "on or before the 1st day of April 1919," to comply with the provisions of the act of 1918. (c) That the petition is premature, in that the mere fact of the passage of resolutions to the effect that the defendants would not comply with the provisions of the act of 1918, after December 1, 1923, would not authorize the grant of mandamus; there must be a failure to perform official duty, before mandamus will lie. (d) The petition shows that up to the time of filing the application for mandamus defendants have complied with the act, and shows that there has been no failure to perform official duty.

The defendants also filed, subject to their demurrer, an answer which admitted the most of the allegations of the petition, but denied that defendants have refused to comply with the provisions of the tick-eradication law. For further answer it was alleged (paragraphs 12-20): "That in January, 1916, Brooks County, acting through its county commissioners, adopted the law then in force for the eradication of ticks, and placed itself under the State and Federal authorities, and from that date up to the filing of this answer defendants have paid every bill which said authorities have required to be paid, and have co-operated in every way with said authorities to try and exterminate the tick in Brooks County. That the commissioners of said county have never failed or refused or hesitated to do everything that was required of them by said authorities. That before January, 1916, when said county commissioners decided to attempt the tick-eradication in said county the commissioners were assured both by the State and Federal authorities that the work could be done and the tick thoroughly eradicated from said county in not more than two years at the outside, and the possibilities were that it would not take more than one year. That the commissioners would never have entered into said work without this assurance from said authorities. That Brooks County has expended, within the eight years it has sought to exterminate the ticks in said county, approximately $50,000.00 col-

lected from the taxpayers of said county.  That in addition thereto said efforts at tick-eradication in the last eight years have cost the cattle-owners in time, labor, etc., in dipping said cattle and complying with the tick law, not less than $200,000.00, making a total cost to Brooks County of approximately $250,000.00 expended in an effort at tick-eradication.  That the tax digest of Brooks County for 1915 shows the value of all horses, mules, hogs, sheep, cattle and other stock of said county to have been $470,618.00; in 1916 their value was $495,648.00, the tax digest consolidating all of the above animals, and not showing each species of animals separate. The tax digest of 1923 shows the values of [other stock to?] have been $361,121.00, and the cattle, which is shown separate for 1923, the value was $67,728.00.

"That in addition to the money expended by the county and the cattle-owners a good many cattle have been killed as a result of dipping in improper solutions prepared by said State and Federal authorities, the value of which defendants are unable to say.  That Quitman, the county-seat of Brooks County, and other cities in Georgia along the Georgia and Florida line have a large class of customers in Madison and Jefferson Counties and other counties in Florida, who bring their produce to Quitman and other towns. That the State and Federal authorities have recently discovered that the mules and horses used by these people of Florida in bringing their products to Georgia  might bring ticks into Georgia, and have recently adopted, to wit, November 1st, 1923, a rigid quarantine requiring the people of Florida to dip their mules.  That this was not discovered by the State and Federal authorities until November 1st, 1923, though it should have been known to them years ago.  That the result of this has been that Quitman and the other border towns have lost large sums of money because said Florida customers were not permitted to come into Georgia.  That the fact that these mules and horses might bring ticks was known or should have been known by said State and Federal authorities when the tick-eradication was undertaken in 1916.  That the State and Federal authorities in charge of the tick-eradication work in Brooks County have proven absolutely incompetent and inefficient.  That this fact is demonstrated because they assured the county commissioners that the tick could and would be eradicated in not over two years from 1916.  That for eight long years defendants and the

people of Brooks County have worked in season and out of season with said authorities, have done all they asked them to do, and now at the end of eight years said State and Federal authorities will give your defendants no assurance as to when, if ever, tick-eradication will be complete in Brooks County. That, as further evidence of the incompetency of said officials, many cattle have been killed as a result of dipping in the solution prepared and placed in the vat by these officials, said solution being improperly mixed and made so strong as to take the hair off of the cattle, and many times create sores which resulted in the death of said cattle. That in many instances cattle which have not had a tick on them for six or seven years, and which have not beeen exposed to tick infestation, said officials have required people to dip and are still requiring them to dip."

The plaintiff filed a demurrer to the answer, as follows: "1. That the third paragraph of defendants' answer, which sets forth that it can neither admit nor deny the allegations contained in the third paragraph of plaintiff's petition, should be stricken and should be accepted as an admission of the facts stated in said third paragraph of the plaintiff's petition, because the facts alleged in the third paragraph of plaintiff's petition are such as are within the knowledge of the defendants and were alleged to be true by the defendants in the resolution adopted on the 7th day of November, 1923, contained in the fourth paragraph of said petition, which said fourth paragraph is admitted by the defendants to be true. 2. That plaintiff demurs to all of that part of defendants' answer which follows the eleventh paragraph of said answer and which is contained in the special affirmative plea, because the allegations contained in said affirmative plea are irrelevant, incompetent, and constitute no defense to the plaintiff's petition."

On the hearing the plaintiff introduced the affidavit of J. W. Woods, who deposed as follows: "That he is supervising inspector of Brooks County, appointed by the Federal Government and has general supervision of the work of tick-eradication in Brooks County; . . that affiant has been in charge of this work since September, 1922; that there are 68 dipping-vats in Brooks County; that during the year 1923 the cattle-owners of Brooks County were required to dip only three times at all of the dipping-vats; that about half of the dipping-vats were required to dip oftener than

that, because of some tick infestation in certain parts of the county; that it is affiant's opinion that the work of tick-eradication is approaching completion in Brooks County; that there have been a good many contributing causes to the prolongation of the work; there has been a failure upon the part of some of the citizens of Brooks County to co-operate in the work, and this has worked a hardship on the large percentage of farmers who were willing to do whatever was required to free the county from tick infestation; there is also the fact that Brooks County is on the Florida line, and this has made the work more difficult. Affiant believes, with the whole-hearted co-operation of the people of Brooks County, the work will be completed during the year 1924. Of course this will not be true if there is a lack of co-operation. That under the Federal law, if the county commissioners of Brooks County withdraw funds and co-operation from tick-eradication work, a quarantine will be put on against Brooks County, which will prevent the shipping of cattle from Brooks County, which will prevent the passage of horses and mules beyond the borders of the county and will cause a very serious financial loss to the county itself, and especially to the owners of cattle in the county." The defendants introduced the joint affidavit of 51 citizens, "that they have read or had read to them the facts set forth in the answer, and that the same are true." The plaintiff objected to its admission, on the ground that "the contents of said affidavit were irrelevant and incompetent in so far as they applied to the paragraphs of the defendants' answer which follow the eleventh paragraph. The objection was overruled.

The judge, after consideration, rendered a decision which, so far as material, was as follows: "The law gives to the State veterinarian plenary powers to insure efficiency by July 31st, 1924, [which] will give to the plaintiff ample time to complete the work in Brooks County with a competent and efficient organization. The commissioners will co-operate with him until such time, and after such date whether they will or will not do so is left to the judgment and discretion of the commissioners." The plaintiff excepted and assigned error on the grounds: (a) "Said order does not direct that mandamus absolute issue, which would be the only legal order which the court could pass under the petition for mandamus and the answer. . . (b) Upon the ground that said order recites certain things as facts which do not appear in the petition or the

answer, nor do they appear in the affidavits which were offered.
. . (c)  Upon the grounds that said order fails to grant the re-
lief prayed for in plaintiff's petition for mandamus, and fails to
compel the defendants, as county commissioners, to co-operate with
plaintiff in the work of tick-eradication as required by law, but
merely states that such commissioners will co-operate with plain-
tiff in error until July 31st, 1924, without ordering or requiring
them to do so. . .  (d)  Upon the ground that the court seeks
to grant, and does grant, to the defendants, as commissioners, dis-
cretionary powers as to co-operation in the work of tick-eradication
in Brooks County, after July 31st, 1924.  This judgment, order,
and ruling of the court giving to said commissioners the right to
decide whether they will or will not obey the law on or after July
31st, 1924, is contrary to law, and is especially assigned as error."

The defendants filed a cross-bill of exceptions assigning error on
the ground that the decision is contrary to law, for the following
reasons:  1.  "Because there were no such facts set forth in
plaintiff's petition as entitled the plaintiff to a mandamus against
the defendants.  2.  Because said petition had been brought pre-
maturely; the fact that defendants had passed resolutions saying
they would not, after December 1, 1923, comply with the provi-
sions of the act of August 17, 1918, did not authorize the court to
grant the extraordinary and harsh remedy of mandamus; there
must have been a failure upon the part of defendants to perform
their official duties, before mandamus would lie, and no such failure
was set out in said petition.  3.  Because said petition did not
allege that defendants had refused to comply with the act of
August 17, 1918.  The petition showed that, up to the time of
filing said application for mandamus, defendants had complied with
said act, and neither plaintiff nor the court had any right to antici-
pate that defendants would not comply with said act in the future.
4.  Because mandamus only lies when officers have failed to enforce
official duties.  Said application showed there had been no failure
to perform official duties on the part of defendants, and said appli-
cation was based upon anticipatory failure of defendants to comply
with said act."

*George B. Davis* and *Branch & Snow,* for plaintiff.

*Bennet & Bennet,* for defendants.

GILBERT, J., dissenting.  Under the statement of the pleadings

and the evidence it appears that on November 7, 1923, at a regular meeting the commissioners of roads and revenues of Brooks County formally adopted a resolution, after reciting certain reasons therefor, "that further co-operation with the present system be withdrawn, and no funds be paid out by this body for this purpose after December 31st, 1923." The term "present system" has reference to the system of dipping for tick-eradication under the statute of this State. The petition for mandamus to require the commissioners to perform their duty under this statute was filed in December, 1923. A rule nisi thereon was granted on December 19, 1923. The interlocutory hearings in pursuance of the rule nisi took place on December 29, 1923. A portion of the judgment rendered, and on which error is assigned, provides: "The commissioners will co-operate with him [State veterinarian] until such time [July 31, 1924], and after such date whether they will or will not do so is left to the judgment and discretion of the commissioners." It must be confessed that the judgment is not entirely clear. Whether the judge meant the words "the commissioners will co-operate" to be a mandate requiring them to co-operate, or whether it was an expression of opinion that the commissioners would voluntarily do so, can not be stated with certainty. If it is a mandate, then I think the judgment was correct under the law and the evidence, and an affirmance should follow. If it was a denial of a mandamus, then a reversal should follow. The resolution of the commissioners was a definite statement and announcement of a refusal to abide by the statute controlling in the situation. Whatever may have been their reasons therefor, however well founded in fact and logic such reasons may have been, there was but one question for the commissioners to determine; and that was, what is the law? The ruling of the majority to the effect that mandamus "is not an appropriate remedy to compel a general course of official conduct for a long series of continuous acts to be performed under varying conditions" is undoubtedly sound law. Some of the prayers in the petition were, under this ruling, inappropriate and could avail petitioner nothing. One of the prayers, however, was "to compel [the commissioners] to comply with the provisions of the tick-eradication law." The resolution of the commissioners already passed was a definite announcement of their refusal to obey the law. "When the case presents a.

single occasion, and calls for an action which is presently determinate, it is entirely practicable to direct the act by mandamus." *Jackson* v. *Cochran,* supra. "Where the act required to be done involves the exercise of some degree of official discretion and judgment upon the part of the officer charged with its performance, the writ may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner." *Richmond County* v. *Steed,* 150 *Ga.* 232 (103 S. E. 253). For these reasons I am compelled to dissent from the judgment. I am authorized to say that Presiding Justice Beck concurs in this dissent.