## 40950. GRUBER v. FULTON COUNTY.

Decided January 6, 1965—Rehearing denied
January 27, 1965.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, George B. Haley, Jr., William C. Lewis, Jr.,* for plaintiff in error.

*Harold Sheats, George Gillon, T. Charles Allen,* contra.

EBERHARDT, Judge. ■ In *Seagraves v. Seagraves,* 193 Ga. 280 (1) (18 SE2d 460) it was held: "A tax return is admissible in evidence to show the amount and value of the property admitted by the taxpayer to be his; but where such a return contains assessments made by some one other than the taxpayer, the assessments are not admissible." The returns in that case were on the forms used in Fulton County, apparently identical in all respects with the forms used for the taxpayer's return here, and, as here, the values of the land were typed in under the columns headed "City Assess." and "County Assess." though signed by the taxpayer or his agent.

It is contended by the condemnor that this situation is distinguishable from that in *Seagraves* in that the tax return introduced in evidence in this case was sworn to or verified by the condemnee's husband, who made the return as her agent, while it does not appear from the opinion in *Seagraves* whether the return in that case was verified or not.

It is true that tax returns are required by law to be verified by the person making the return. *Code Ann.* § 92-6216. The oath is required to be "subscribed by the person making the return, and the administering and taking of the oath shall be attested by the *receiver of tax returns.* . ."[1] (Emphasis supplied.)

We have examined the record in the *Seagraves* case and find

---

[1]The statute permits the oath of "nonresidents, females and sick persons" to be taken and subscribed before any person authorized to administer an oath. An amendment adding a provision permitting returns by mail to be attested by any person authorized by law to administer oaths was adopted by Ga. L. 1964, p. 333.

that no copy of the return was sent up from the trial court. As is authorized to be done by *Code Ann.* § 6-801, it was abstracted in the briefing of the evidence to show the items of property listed and the values placed thereon under the headings "City Assessment" and "County Assessment." When the return was exhibited to Mr. Seagraves for identification he testified: "That is my signature, it looks like it. . . This is the return that I made to the tax assessors." At the conclusion of the brief of the evidence it was recited: "Thereupon the plaintiff tendered in evidence the tax records for 1940 showing a return made by L. J. Seagraves, being a record of his return of Fulton County taxes . . . signed by L. J. Seagraves, dated March 6, 1940. The property listed on said return was as follows: (then appears a list of the items, together with the values in the columns, as stated above.)"

Since the taxpayer was required to make oath to the return (*Code Ann.* § 92-6216), in the absence of any showing to the contrary—and there was no such showing in that record—it must be presumed that he did so. *Clements v. Hollingsworth,* 205 Ga. 153 (5) (52 SE2d 465). Since the statute requires that the receiver of the return administer the oath to the taxpayer, for the same reason it must be presumed that he did so, *Todd v. State,* 205 Ga. 363 (53 SE2d 906), and especially so since it appears that the tax return was made in 1940. *Code* § 38-114. We must assume that the ruling in *Seagraves* was made in the light of those presumptions.

Turning now to the record in this case, we find the three lots, though lying adjacent and in what might otherwise be considered as one tract, were listed on two separate returns. Certified photostatic copies of the two returns are in the record. Each of them appears to have been prepared on a typewriter or machine of some kind so that the name of the taxpayer is listed at the upper left and the items of real estate are listed below with the values of each item set opposite them under columns headed "City Assessment" and "County Assessment"—just as was the case in *Seagraves.* The listings of each item of property and of the values in these columns was done with a typewriter or ma-

chine. Each carries on its face the legend "data processing (ver) #3." When they were exhibited to Mr. Gruber he testified that he signed the returns but that he did not place any values on any of the items of property shown or listed—that this was done in advance by the people in the tax office, and that in making the returns each year for his wife he had never at any time since the purchase of these items placed any values on them.

Printed at the bottom of each of the returns is the form of oath prescribed by *Code Ann.* § 92-6216, and at the end of it is further printed "sworn to and subscribed before me, Jack L. Camp, Tax Comm." Following the affidavit form appears the signature of Mr. Gruber, but there is no attestation on either of the returns by Jack L. Camp. In the place for attestation on one of them is the notation "Bb," while the other is entirely blank.

If there were evidence in the record that the oath was in fact administered to Mr. Gruber by Jack L. Camp, the tax commissioner, the attestation might have been affixed nunc pro tunc. *Veal v. Perkerson*, 47 Ga. 92. But there is no evidence in this record that Mr. Camp, or any person authorized by law, administered any oath or that Mr. Gruber did more than sign the returns, and the returns themselves show a lack of any attestation, a lack of any certificate of the officer before whom the writing was sworn to—which is the jurat—and thus the lack of any valid jurat.

If it be said that the entry or notation on one of the returns "Bb" indicates that the oath may have been administered by somebody, it must be observed that the statute requires that it be done before the *tax commissioner*, since Mr. Gruber was a male resident of Fulton County. Moreover, nothing appears to indicate that "Bb" attested the return in any official capacity, or whether he was a deputy commissioner, an assistant, a mere employee, or a wayfaring stranger. The photostatic copies of the returns are certified to be true and correct by the tax commissioner, Jack L. Camp. He is not "Bb," and the handwriting of the entry or notation, if it has any significance—which we do not think it does—is obviously not that of Jack L. Camp.

"Powers of all public officers are defined by law, and all persons must take notice thereof." *Code* § 89-903; *Morris Plan Bank v. Simmons,* 201 Ga. 157, 171 (39 SE2d 166). Since it is required by *Code Ann.* § 92-6216 that the oath be administered by and the affidavit subscribed before the tax commissioner nobody else had authority to perform that function, and the attempted performance by anybody else would be without force or validity unless that person were authorized by law to do it.[2] See *Wilkowski v. Halle,* 37 Ga. 678 (95 AD 374); *Heard v. National Bank of Ill.,* 114 Ga. 291 (40 SE 266); *Falligant v. Blitch,* 19 Ga. App. 675 (91 SE 1057); *Brach & Sons v. Oglesby Grocery Co.,* 33 Ga. App. 481 (127 SE 157). "An attempted oath administered by one who is himself not qualified to administer it is abortive and in effect no oath." Crockett v. Cassels, 95 Fla. 851 (116 S 865). It has been held that a solicitor of a court, unless authorized by statute, has no authority to administer an oath. State v. Furmage, 250 N.C. 616 (109 SE2d 563). And the same is true of a postmaster. Dawson v. Meier, (N.D.) 78 NW2d 420. Where the statute authorized the foreman of a grand jury to administer the oath to witnesses appearing before that body, his authority could not extend to any others; he could not swear the grand jurors. Hammers v. State, (Okla.) 337

---

[2]While the Tax Commissioner of Fulton County is authorized by law to appoint deputies, including a Chief Deputy (see Ga. L. 1939, p. 565; Ga. L. 1951, p. 3006; Ga. L. 1952, p. 514), their authority and duties appear to be limited to the levy and sale of property under executions for the collection of taxes (see Ga. L. 1890-91, p. 101; Ga. L. 1931, p. 248). Since their authority is defined by law, it can not be enlarged by the custom of permitting them to administer the oath and attest the affidavit. *Fidelity & Deposit Co. v. Butler,* 130 Ga. 225, 243 (3) (60 SE 851, 16 LRA (NS) 994); *Deadwyler & Co. v. Karow,* 131 Ga. 227, 235 (62 SE 172, 19 LRA (NS) 197); *Morris Plan Bank v. Simmons,* 201 Ga. 157, 172 (39 SE2d 166); *MacKenzie v. Jackson,* 82 Ga. 80 (2) (8 SE 77). Where the statute authorized an oath to be administered by an "assistant" commissioner, a deputy commissioner had no power to do it. People v. Beerman, 12 NYS2d 888.

P2d 1097. "It is well settled that no consideration of public policy can properly induce a court to reject the statutory definition of the powers of an officer." Govt. of Virgin Islands v. Gordon, 244 F2d 818, 820 (3rd Cir.). Consequently, unless it appears that Mr. Gruber did, in fact, have the oath administered to him by Mr. Camp, the tax commissioner, in connection with the making of the returns, or somebody having lawful authority to do it, there is no valid oath or affidavit. That does not appear.

"In the absence of a valid jurat, a writing in the form of an affidavit has no force, no validity, amounts to nothing, when standing alone, or when construed in connection with" other evidence. *Laurens County v. Keen,* 214 Ga. 32, 35 (102 SE2d 697). To make a valid affidavit the affiant "must swear to it, and the fact of his swearing must be certified by a proper officer." In Re Bennett, 223 FSupp. 423. "In order to make an affidavit there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." *Carnes v. Carnes,* 138 Ga. 1, 6 (74 SE 785).[3] In *Matthews v. Reid,* 94 Ga. 461 (19 SE 247), an attorney prepared an affidavit for the purpose of foreclosing a chattel mortgage, signed his name to it, and then laid it on the desk of the clerk of the superior court, at which the latter was sitting, at the same time remarking: "Here is an affidavit I want to swear to; I have already signed it; the facts stated in it are true." It did not appear that the clerk heard what the attorney said, no oath was formally administered and the clerk did not for a long time afterward sign the jurat. It was held that the oath was not duly made, and that the clerk had no authority to issue an execution thereon. And in *McCain v. Bonner,* 122 Ga. 842, 846 (51 SE 36), it was held that: "The acts of the officer and of the affiant must be concurrent and must conclusively indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid

---

[3]For an exhaustive treatment of the general subject matter see Silving, The Oath, 68 YLJ 1329; 68 YLJ 1521.

78

affidavit." The comment of the court in *Britt v. Davis*, 130 Ga. 74, 78 (60 SE 180) seems appropriate: "We can not but deprecate the tendency to treat the taking of an oath as a mere technical formality, worthy of little attention. In the strenuous age in which we live speed is deemed of prime importance. But one must still pause long enough to verify the statements contained in a paper prepared for use as an affidavit, by swearing to them, . . ." and further, "Whether the affiant testifies in view of his responsibility to God or only to the criminal law, in either event what he does is something more than merely to sign a paper."

If, as was held in *McLendon v. Dunlap Hdw. Co.*, 3 Ga. App. 206, 210 (59 SE 718), "this oath was a part of the returns, and was necessary to make the returns complete or of any probative value," it must follow that these returns should have been excluded.

Moreover, it is to be observed that the form of the oath prescribed by the statute and used in the printed form on the returns requires that the person making the return swear that "the *value placed by me*"—not that placed by the tax officials— "is the true market value thereof." Mr. Gruber testified that at no time did he place any value on any item of property returned. The returns were hearsay, without probative value and under the ruling in *Seagraves v. Seagraves*, 193 Ga. 280 (1), supra, should have been excluded.

If it had appeared that Mr. Gruber had placed his own valuations, or those of his wife, on the items returned and that he had sworn to them in the manner required by law before the tax commissioner, there would have been no question of their admissibility. *Seagraves v. Seagraves*, supra, and citations. But we do not have that situation here; rather we have what appears to us to be the identical situation dealt with in *Seagraves*, with the added fact that the returns do not carry a valid jurat.

Since the returns were inadmissible, interrogation of witnesses as to their contents or as to what they might show was impermissible. Condemnor's contention that the returns were

offered for the purpose of impeaching the condemnee's testimony that she had planned since about 1958 to develop it as a motel site cannot avail. The fact that the returns showed the property as three residential lots while it continued to be zoned as residential was not inconsistent with her plan to obtain a rezoning and develop it as commercial. Further, the condemnor concedes that the returns were introduced for the further purpose of showing value.

■ In his argument to the jury counsel for the condemnor placed the figures obtained from the tax returns purporting to represent values of condemnee's three lots on a blackboard, multiplying each by four and argued that from the sum of these the values placed on the whole property by the condemnee and her witnesses were absurd. Counsel for the condemnee objected to the use of the figures obtained from the tax return and their multiplication by the arbitrary figure of four in arriving at the value of the land and asked that the jury be instructed to disregard it. The objection was overruled.

While counsel should be required to confine his argument to the evidence properly in the case and reasonable deductions to be drawn therefrom, he does have a reasonable latitude which is largely to be controlled by the sound discretion of the judge. *Adkins v. Flagg,* 147 Ga. 136 (93 SE 92). The use of the arbitrary figure of four in multiplying the figures obtained from the tax returns purporting to represent value when there was no testimony of any return by the taxpayer on the basis of one-fourth of value or of any assessment by the taxing authorities on that basis would seem to be going rather far afield. If counsel wished to argue a comparison with the values given by the condemnee or his witnesses we hardly see how the multiplying could have any relevancy, the real comparison to be made being that between the figure on the return and that given by the witnesses.

However, since the returns themselves were inadmissible for the reason given above, the argument was improper for the added reason that there was no legal evidence to support it or from which it might be inferred.

■ The request to charge that if the city had refused to rezone the property for the purpose of holding the value down in contemplation of future acquisition for highway use, was not adjusted to the evidence even if proper as an abstract principle of law. See generally, In Re Inwood Hill Park v. City of New York, 243 NYS 63; Board of Commissioners v. Tallahassee Bank &c. Co., (Fla.) 108 S2d 74; 4 Nichols, Eminent Domain, § 12.322 (3rd Ed.). Cf. *Civils v. Fulton County*, 108 Ga. App. 793 (134 SE2d 453). Mr. Gruber testified that he went to the Atlanta-Fulton Planning Board to discuss the matter of rezoning and was there given the information that the property was "frozen" because of the plans for highway use later on, while the only zoning authority for the property was the City of Atlanta to which he never made application for a change. Refusal of this request was proper.

■ The exclusion of two photographs of motels located on other properties nearby was not error, for whether they would fairly and accurately portray the motel that Mrs. Gruber had planned to build on the land being condemned did not appear from the other evidence, nor did it appear that there was such comparability between those properties and that being condemned as to render them admissible. These matters are largely left to the discretion of the trial judge, and we find no abuse. *Rosenthal v. O'Neal*, 108 Ga. App. 54 (2) (132 SE2d 150); *Owensby v. Jones*, 109 Ga. App. 398 (8) (136 SE2d 451); *McKinney v. Pitts*, 109 Ga. App. 866 (4) (137 SE2d 571).

■ Error is assigned upon the restriction of the motel plans that Mrs. Gruber's son had prepared, when admitted in evidence, to the showing of value, if they did, of the lands taken, in the light of all the other evidence. Since these were plans only and no structure had been placed on the land pursuant to them, their value as evidence was to show the possibility of making the improvement as that might affect the land value. We find no error in this manner of admitting them.

■ The condemnee strongly urges that the amount of the verdict is so low until it carries inadequacy on its face. Since we are reversing on other grounds a consideration of this assignment is unnecessary.

*Judgment reversed. Nichols, P. J., Bell, P. J., Frankum and Hall, JJ., concur. Felton, C. J., Jordan, Russell and Pannell, JJ., dissent in part.*

JORDAN, Judge, dissenting. I disagree with the result reached in Divisions 1 and 2 of the opinion, since I think the facts here make this case distinguishable from the holding in *Seagraves,* relied upon as authority in the majority opinion.

First of all, the tax returns involved in *Seagraves* were actually admitted in evidence, the trial court ruling out only the figures under the column headed "city assessment" and "county assessment," and this ruling was upheld by the Supreme Court on the ground that such assessments did not appear to have been made by the person making the return and that the exclusion of these assessments did not violate the general rule governing the admissibility of such tax returns.

The Supreme Court in *Seagraves* stated the general rule to be that such tax returns are admissible as evidence for the purpose of showing the amount and value of the property *admitted* by the defendant to be his, citing *Tolleson v. Posey,* 32 Ga. 372, 375, in which it was stated, "There can be no more reliable evidence to show a given amount of wealth than his *own verified statement,* given as the measure of liability for taxation." (Emphasis supplied.) This general rule was followed in *State Hwy. Dept. v. Wilkes,* 106 Ga. App. 634, 639 (127 SE2d 715), in which Judge Frankum writing for the court said, "Under Georgia law, in cases involving value of property, tax returns made by the owner of the property in question, which set forth a particular value on such property, are admissible as a circumstance for the consideration of the jury to show the value placed on the property by the owner." (Citing cases).

What did not appear in the record in the *Seagraves* case, and which does appear on the tax return involved in this case, was an oath signed by the taxpayer's agent as follows:

"I do solemnly swear that I have carefully read (or have heard read) and have duly considered the questions propounded in the foregoing tax list, and that the value placed by me on the property returned, as shown by said list and all attached returns, is at the true market value thereof. . ."

This oath, admittedly signed by the taxpayer's agent in this case, clearly shows that the figures shown under the city and county assessment columns were indeed adopted as his own and became in fact the valuations placed thereon by the taxpayer even though physically placed on the return by someone else. Once this oath is signed the return is complete and it becomes the taxpayer's "own verified statement," referred to in *Tolleson,* supra. This oath is an integral part of the return and figures or assessments placed thereon have no probative value unless and until the taxpayer executes the same and adopts the figures and writings on such return as his own. As was stated in *McLendon v. Dunlap Hdw. Co.,* 3 Ga. App. 206, 210 (59 SE 718), "This oath was a part of the returns, and was necessary, to make the returns complete or of any probative value."

The majority opinion raises the technical objection that the tax return in this case is incomplete and of no probative value since it does not appear that the taxpayer's oath was administered and attested by the receiver of tax returns as required by statute and that the jurat appears to be incomplete. Such technical objections as raised in this portion of the majority opinion were dealt with by the Supreme Court in the case of *State of Ga. v. Johnson,* 214 Ga. 607 (106 SE2d 353). In that case the Board of Education for Savannah and Chatham County sought by mandamus to compel the tax commissioner to actually administer to each person making a return of taxable property the oath required by law and to otherwise follow strictly and technically the statute governing the returns of property. The tax commissioner filed an answer in which he admitted that he was required to perform certain ministerial duties but that the duty rests upon the taxpayer to estimate the value of the property listed on his return; that the law does not require him to personally present the list of questions to the taxpayer nor to personally administer the oath to each taxpayer, since these were ministerial acts which could be properly delegated to deputies and assistants; and that the law requires no more than a *substantial compliance* by his duly constituted deputies and assistants with the provisions of the Code; and that to apply the law and the strained construction insisted upon in the peti-

tion would be to require him to perform an impossibility, as shown by the number of returns received, and the time that would be required to receive them in the manner insisted upon in the petition. The Supreme Court, speaking through Justice Head, while denying the mandamus on other grounds, went on to consider these issues and say (p. 611): "The acts sought by the relator to be required of the respondent must of necessity be performed under varying conditions as to the number of taxpayers seeking to make returns, and other conditions not readily anticipated. 'While mandamus will lie to compel performance of specific acts, where the duty to discharge them is clear, it is not an appropriate remedy to compel a general course of official conduct for a long series of continuous acts to be performed under varying conditions.' *Jackson v. Cochran,* 134 Ga. 396 (67 SE 825, 20 AC 219). See also *Bahnsen v. Young,* 159 Ga. 256 (125 SE 459); *Atlanta Title & Trust Co. v. Tidwell,* 173 Ga. 499 (160 SE 620, 80 ALR 735); *Richter v. Jordan,* 185 Ga. 39 (193 SE 871); *Murphey v. Brock,* 206 Ga. 9 (55 SE2d 564).

"The complaint that the respondent (whether on his own motion, or in conjunction with the tax assessors) entered certain property on the returns to be made by the taxpayers, would not of itself invalidate the returns. This procedure may well have been used to expedite a return of the taxpayer's property, but in any event, under *Code* § 92-5703, property subject to taxation is to 'be returned by the taxpayers,' and the taxpayer would not be relieved of his responsibility to return his property because it might appear that certain items of his property had previously been entered on his return."

It can thus be seen that the Supreme Court has recognized the impossibility and impracticability of requiring the tax commissioner to personally administer and subscribe the taxpayer's oath to each individual taxpayer and that "a substantial compliance" is all that is required in dealing with the technical provisions of these Code sections. Viewed in the light of this opinion it can be seen that the tax return involved in this case was complete as to the taxpayer and that the law was substantially complied with. In such an instance the taxpayer cannot

be held to complain of some minor or technical defect in the administering and attestation of his oath. In any event, a jurat is not a part of the oath and no objection was raised on this point in the trial court.

The return admitted in evidence in this case is headed "Taxpayers Returns of Property for Taxation" under which is listed the property and valuation, followed by the taxpayer's oath. If the taxpayer's oath was subscribed to the return in the *Seagraves* case, it does not appear in the record and there was thus no showing that the "assessment" figures which were excluded were ever adopted or admitted by the taxpayer to be his own.

The very purpose of the oath and signature of the taxpayer on a return is that it shall become his own true and verified return. Our laws require that "all property or other things of value . . . shall be returned *by the taxpayers.*" *Code* § 92-5703. The return cannot be made by a tax commissioner or tax receiver or city or county assessors. It is a matter of common knowledge that most returns are filled in and completed based on the prior year's return and submitted to the taxpayer at the time he makes the return. It does not become a complete return, however, unless and until the taxpayer or his agent adopts it as his own and subscribes to the taxpayer's oath. Our laws provide adequate procedures for arbitration and other remedies where the taxpayer is dissatisfied with the figures or assessments made on his property. *Code Ann.* § 92-6912. If he pursues none of these remedies and subscribes under oath that the figures shown on the return represent "the value placed by me on the property," should he later be heard to complain that the figures are not his own? Certainly not, and once such a return is made accompanied by the oath adopting such return as his own, it becomes absolutely immaterial that the figures might have been physically inserted therein by someone other than himself. Technicalities have their place in our system of jurisprudence but they should not be honored to the point of absurdity.

I do not think the *Seagraves* case is controlling here, for the Supreme Court did not pass upon the exact question here presented. In this case we have the clear assent, concurrence and

adoption by the taxpayer of the assessment figures placed on the return.

The returns were admitted in evidence by the trial court under appropriate instructions that they did not represent the value or just and adequate compensation for the property but "just one element of evidence that you may consider with all the other evidence in the case and your honest, conscientious efforts to arrive at what constitutes just and adequate compensation for this property." Under our general rule allowing the admission of such documents in cases of this nature, and under the facts in this case, I do not think the trial court was in error in admitting same into evidence.

Likewise, such returns being properly admissible, it was not error to allow argument based thereon as set out in Division 2 of the opinion.

I am authorized to state that Felton, C. J., Russell and Pannell, JJ., concur in this dissent.