ATLANTA TITLE & TRUST CO. *v.* TIDWELL *et al.*

No. 7992.   October 2, 1931.

500

502

504

*Harold Hirsch, Marion Smith, Slaton & Hopkins,* and *Tye, Thomson & Tye,* for plaintiff in error.

*Bond Almand, H. A. Beaman, W. G. Grant, Stephens Mitchell, Madison Richardson, E. P. Tuttle,* and *C. B. Shelton,* contra.

ATKINSON, J. ■ "Where the question is one of public and not mere private right, and the object of mandamus is to enforce performance of a public duty, the relator need not show that he has any legal or special interest in the result; it being sufficient that

he is interested in having the law executed and the duty enforced." *Board of Commissioners of Manchester* v. *Montgomery,* 170 *Ga.* 361 (2) (153 S. E. 34) ; *Plainfield Consolidated School District* v. *Cook,* 173 *Ga.* 447 (160 S. E. 617). In the instant case the several questions were as to public, and not mere private right, except the question relating to notations by the Atlanta Title and Trust Company on original instruments lodged with the clerk of the superior court for record, as alleged in paragraph 9 of the petition. That question related to a private right affecting only the owner of the paper lodged for record. The petition did not allege the making of a notation on a paper lodged by the petitioner with the clerk to be recorded.

■ In paragraph 7 of the petition it is alleged: "Among the duties of the clerk of Fulton superior court are the following : (a) To receive, file, and record deeds, contracts, bills of sale, and other legal instruments required by the law of Georgia to be registered, and for such registration to collect from the person filing said instruments such fees as are required by law to be paid for such registration. (b) To provide, at the expense of said county, a duplex index-book, wherein shall be indexed the names of grantor and grantee of every instrument in his office, the character of the instrument, date of the instrument, book where recorded, and the date of the record. (c) Under the law as set forth in section 5995, Code of Georgia, it is the duty of the clerk of Fulton superior court to charge a fee for the examination of any record in the sum of 25 cents when the aid of said clerk is required. (d) Under the law as set forth in section 5995, Code of Georgia, it is the duty of the clerk of Fulton superior court to collect a fee of $1.50 for every examination made of the record and abstract of result made. (e) It is the duty of the clerk of Fulton superior court to receive and collect such fees for the sole use of the County of Fulton, and to account for and pay the same over to the treasurer of said county. (f) To keep all the books, papers, dockets, and records belonging to their office with care and security, and the papers filed, arranged, numbered, and labeled, so as to be of easy reference." In the eighteenth paragraph of the petition it is alleged: "Petitioner brings this his petition for the purpose of having this court compel said defendant to perform the duties of his office as set forth in the Code of Georgia." It was held by this court that; "While

mandamus will lie to compel performance of specific acts, where the duty to discharge them is clear, it is not an appropriate remedy to compel a general course of official conduct for a long series of continuous acts to be performed under varying conditions." *Jackson* v. *Cochran,* 134 *Ga.* 396 (67 S. E. 825, 20 Ann. Cas. 219); *Bahnsen* v. *Young,* 159 *Ga.* 256 (125 S. E. 459). Under application of the principle above stated, the writ of mandamus will not lie to ·compel the clerk of the superior court to perform a general course of duties as are above specified.

■ It is provided in the Civil Code, § 5440: "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." In *Patterson* v. *Taylor,* 98 *Ga.* 646 (25 S. E. 771), it was held that the remedy by mandamus is to "compel performance of specific acts" in instances "where the duty . . is clear and well defined, and when no element of discretion is involved in the performance." The remedy of mandamus is essentially to *compel performance.* *Jackson* v. *Cochran,* and *Bahnsen* v. *Young,* supra. It is not to prevent specific acts. This court has never held it to be a remedy for such purpose. On the other hand it has been uniformly held that injunction is the remedy where the relief sought is the prevention of acts. It is stated in 38 C. J. 545, § 12: "Mandamus is strictly a legal remedy . . to compel action, while injunction is a remedy to prevent action. . , It is very generally held that mandamus is not the proper remedy where the relator does not ask that defendant be compelled to do an act, but demands on the contrary that he be forbidden to do certain acts." Among the citations by the author is Southern Leasing Co. *v.* Williams, 160 N. Y. Supp. 440 (96 Misc. 358). In that case the judge, in a taxpayer's suit, considered the question whether injunction or mandamus was the appropriate remedy against an officer to prevent permission to private persons to maintain an electric illuminating sign. In announcing and applying the above principle the judge said: "Mandamus against the defendant commissioner will not lie, since the purpose of the proceeding was not to compel him to do something that he ought to do, but to prevent him from doing something that he ought not to do." The case of State *v.* Conners-

ville Natural Gas Co., 163 Ind. 563 (71 N. E. 483), was a suit for mandamus to compel the company "to cease taking up and removing its pipe-line on the relator's farm, and to replace any part of the line taken up at the commencement of this suit," etc. It was held that the complaint was insufficient, because mandamus is not the proper remedy to compel such company "to cease taking up and removing the pipes."

Among the allegations of the petition in the instant case are the following: "(9) The said Atlanta Title & Trust Company, for several years prior to January 1st, 1925, have been permitted and is now permitted by the defendant to examine and abstract all records in the defendant's office in the following manner: (a) When any person files an instrument required to be recorded and which affects the title to real property with said defendant, the said instrument is first indexed by said clerk and is then by him delivered into the possession of an employee of the Atlanta Title & Trust Company, and is by said employee removed from that portion of the court-house occupied by said clerk to that portion of the court-house occupied by said Title Company, whose employee first causes a serial number used by said Atlanta Title & Trust Company to be stamped on said instrument. A full abstract of said instrument is then made by said Title Company. After said abstract has been made, the possession of said instrument is surrendered back to said clerk, who causes said instrument to be recorded in a record-book, and the private serial number of said Title Company is recorded in said book by the clerk of the superior court, and said serial number is made a part of the permanent record of said instrument. After such recording the said Title Company is permitted, before the record is completed on the clerk's indexes, to obtain from the face of the original instrument the book and page number of its recordation in the clerk's record. (b) After Atlanta Title & Trust Company has examined and made an abstract of each instrument filed affecting the title to or creating a lien upon real estate in Fulton County, in the manner above set forth, from the original instrument turned over to it, one of its employees takes its abstract of such instrument and compares such abstract with the record of such instrument in the permanent books of records as written therein by the clerk or his deputy or employee, an inspection of such instrument as so entered in the permanent books of record being

made of every instrument filed with the clerk. For this purpose such books of record are by the employees of Atlanta Title & Trust Company removed from their places in the office of the clerk, and are inspected, compared, and checked by said Title Company for long periods of time. Three employees of said Title Company give large portions of their time to such inspecting, comparing, and checking of the records contained in such permanent books of records kept by the clerk, as required by law. . . (13) The defendant, in the space set aside to him in his capacity as clerk in Fulton County court-house, is permitting Atlanta Title & Trust Company to occupy a large space for its exclusive use, where said Title Company maintains a private office, which has in it ten or more desks, private lockers, a private telephone, and wherein said Title Company carries on its private business and has in said space and in said clerk's office twelve or more employees who have complete access to all offices in the defendant's office. The employees of said Title Company are given the combination of the vault by which the record-room is locked, and have keys to the clerk's offices, and are permitted to enter said record-room and offices at any and all hours of the day and night. . . (15) By reason of the facts set forth above, the said Title Company has been permitted to use the public property of Fulton County of the rental value of $125.00 per month since January 1st, 1925, without paying anything to said county for its use. (16) The defendant, in his capacity as clerk as aforesaid, and his predecessors in office, has permitted and is illegally permitting said Title Company, a private corporation, to occupy said space in said court-house, in that neither defendant nor any one else has right to permit any private individual or corporation to occupy space in said court-house." It is plainly manifest that these several paragraphs relate to practices of the clerk of the superior court, which the petition seeks to prevent. Prevention of such practices is essentially injunctive in character; and mandamus, the office of which is to compel specific acts, is not an appropriate remedy.

■ In so far as relates to the matters alleged in paragraphs 9, 13, 15, and 16 of the petition (which need not again be set forth), the decision in this case may be left as controlled by the ruling in the preceding division; but if mandamus would generally lie to *prevent* commission of specific acts, alleged contemplated acts

that would not injure the complaining petitioner would not furnish the petitioner ground of complaint. The practice of allowing the Atlanta Title and Trust Company to stamp a private serial number on original papers filed with the clerk for record, as alleged in paragraph 9(a) of the petition, affects only the owner of the paper. If the owner would suffer substantial injury and might have mandamus in lieu of injunction to prevent such injury, the plaintiff in the instant case, suing as a citizen, taxpayer, and member of the bar, and not alleging the making of a serial number on his private paper, would not allege a cause of action for such relief.

■ If under any circumstances mandamus would be an available remedy to prevent the clerk of the superior court from permitting examinations of documents filed for record, and of his records, and making abstracts therefrom, there is no ground for such relief in the instant case, because the clerk has authority, in proper administration of his office, to permit the making of such examinations and abstracts. The examinations and abstracts which are complained of in this case relate to original documents on file for record, and records made by the clerk of titles and liens on property. The records in the clerk's office relating to these matters result from statutes making it the duty of the clerk to keep books and record therein deeds, mortgages, and other instruments as prescribed by the statutes. The records so made are essentially public, intended to charge constructive notice of their contents to the general public, and correspondingly to afford opportunity to the general public to learn the facts which such records disclose. This may also be said of original documents prior to actual record, which are filed in the office of the clerk of the superior court to be recorded, because as against the interest of third parties acting in good faith and without notice, who have acquired a lien or transfer binding the same property, they take effect from the time they are filed for record in the clerk's office. Civil Code, § 3320. It is not stated in any statute that the clerk shall not permit examinations and abstracts as above indicated to be made by any member of the general public, or that he shall not permit such examinations and abstracts to be made by a "private corporation organized for pecuniary gain and engaged in the business of examining titles, abstracting titles, and insuring titles to real property." The public records are made for the benefit and protection of such corporations

as well as for any other person or member of the general public. It would require a new statute to deny them such benefits and protection. It is declared in the Civil Code, § 5995: "The clerks of the superior courts of this State shall be entitled to charge and collect the following fees for official duties performed by them, to wit: . . For inspection of books, when their aid is required, .25. . . For examination of record and abstract of result, 1.50." The first of these provisions relates to inspection of the books by a member of the public who requires the aid of the clerk in making the inspection, while the second relates to examination of the records and making abstract of the result where the clerk renders the entire service. These do not deny the right of individual members of the public to make examinations and abstracts of the results of such examinations, but only impose charges or fees for services which the clerk may render in making such examinations and abstracts. In the Civil Code, § 14, it is declared: "All books kept by any public officer under the laws of this State shall be subject to the inspection of all the citizens of this State, within office hours, every day except Sundays and holidays." This law does not specifically name the clerk of the superior court, but applies to him as a public officer and the books in his office. It does not exclude corporations operating for private gain, as referred to above, from the benefits and protection of the recording acts, but extends to "all the citizens of this State." It does not declare that the clerk shall have a discretion to deny the right of inspection, but makes it mandatory that he shall afford such right to all applying therefor within his office hours, except Sundays and holidays. It manifests a legislative policy to extend the benefits and protection of the recording acts to the public, rather than take them away. This seems to be the only limit upon the discretion of the clerk as to how he shall administer his office in regard to examinations of records, and it favors the public. So when the clerk in the exercise of his discretion permits the Atlanta Title and Trust Company to examine the original documents filed in his office for record, and his books of record, and to make abstracts thereof, as alleged in the petition, he acts within his authority. The foregoing principle was invoked and applied in the case of *Buck* v. *Collins,* 51 *Ga.* 391 (21 Am. R. 236), which was followed in the case of *Land Title Warranty &c. Co.* v. *Tanner,*

99 *Ga.* 470 (27 S. E. 727), but in each of the cases a different result was reached, based on the difference in the facts of those cases and the instant case, the effort in those cases being to compel the clerk, against his will, to grant the privilege of examining and abstracting his records without the payment of the prescribed fees, while in the instant case the clerk has exercised his discretion in granting the privileges, and the suit is brought to prevent him from doing so. In *Buck* v. *Collins,* supra, the opinion pronounces views that do not accord with what has been said above; but in so far as they differ they are not controlling as a precedent, because the decision could be no broader than its facts, and the facts were different from the instant case, as pointed out above. Since the adoption of the Code of 1910, the act approved August 13, 1924 (Ga. L. 1924, p. 87), has been passed, placing the clerk of the superior court of Fulton County on a salary, and requiring the fees that under prior law were payable to the clerk to be paid into the county treasury; but this act did not affect the discretion of the clerk as dealt with above.

■ The fees of the clerk are expressly provided for by law. There are no fees except those that are so provided. As stated in the preceding division, the fee of $1.50, prescribed for making examination of records and abstract of the result, refers to such examinations and abstracts as are made by the clerk. There is no provision for a fee where a member of the public makes the examination and abstract without the aid of the clerk.

■ If mandamus would lie to prevent the clerk from permitting the Atlanta Title and Trust Company to occupy space and do the other things as alleged in paragraphs 13, 15, and 16 of the petition, which need not be again repeated, the allegations do not show ground for complaint. All those things relate to matters of convenience and expediency in the conduct of his office by the clerk.

There is no provision in the constitution or in the statutes which expressly denies authority of the clerk, in the administration of his office, to do any of the several things above referred to as being within his discretion. The constitution declares that "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." Civil Code, § 6548. In *Dyer* v. *Martin,* 132 *Ga.* 445, 447 (64 S. E. 475), it was said: "When the ad-

ministration of county affairs in a particular county is lodged with commissioners, the power over county matters usually exercised by the ordinary devolves upon them, and they may discharge such functions, with reference to county matters as are conferred on them by the act of their creation, which theretofore have been performed by the ordinary. *Town of Decatur* v. *DeKalb County*, 130 *Ga.* 483 [61 S. E. 23]." It is declared in the Civil Code, § 387: "Whenever it becomes necessary to build or repair any court-house, . . in any county in this State, the officer having charge of the roads and revenues and public buildings of such county shall cause the same to be built or repaired by letting out the contract therefor to the lowest bidder, at public outcry, before the court-house door, after having advertised the letting of said contract as hereinafter provided." In § 388 it is declared that notice of the contract shall be published as therein specified, and that the "notice and advertisement shall embrace such details and specifications as will enable the public to know the extent and character of the work to be done, and the terms and time of payment." By § 396 it is provided: "The ordinary has the control of all property belonging to the county." And by § 400: "It is the duty of the ordinaries to erect or repair, when necessary, their respective court-houses, . . . to furnish each with all the furniture necessary for the different rooms," and "offices." It appears from the foregoing that authority over planning, constructing, and equipping court-houses is imposed on the ordinaries, except in those counties where authority over county matters has been transferred to county commissioners, as provided in the constitution. It also appears that there is no attempt to specify in detail how the authority shall be exercised, or any particular plans for the court-house or of what its equipment shall consist. All those are left to the sound discretion of the officers in whom the authority is vested. That discretion is very broad, and must be exercised with the view of serving the public interest and convenience in relation to the uses for which court-houses are to be employed. It has generally been held that county administrative officers in charge of county affairs have a broad discretion, "and the reviewing power of the judge of the superior court should be exercised with caution, and no interference had unless it be manifest that the county authorities are abusing the discretion with which they

are vested." *Anderson* v. *Newton,* 123 *Ga.* 512 (3) (51 S. E. 508) ; *Gaines* v. *Dyer,* 128 *Ga.* 585 (58 S. E. 175) ; *Dyer* v. *Martin,* supra. In the exercise of their discretion in building and equipping the court-house : "Such ordinaries shall designate the rooms in the court-house to be occupied by each of the county officers, and enter the same on their minutes, which they may change from time to time as convenience may require." Civil Code, § 401.

The act approved December 3, 1880 (Ga. L. 1880-81, p. 508), establishing the Board of Commissioners of Fulton County, conferred exclusive jurisdiction upon the board of commissioners "in directing and controlling all the property of the county, as they may deem expedient, according to law." The amendatory act of September 29, 1881 (Ga. L. 1880-81, p. 546), enlarged the power of the board of commissioners so as to extend "over all special acts heretofore passed, and of force, relative to county matters applicable to Fulton County." Under these laws, the clerk of the superior court being one of the county officers, it is the duty of the commissioners of Fulton County to provide "rooms in the courthouse to be occupied by" the clerk. No limitations or restrictions are expressed as to the number and character or plan of the rooms or their equipment to be supplied to the clerk. Relatively to these matters, the county commissioners in the exercise of their broad discretion will make provision as will serve the public interest and convenience. The clerk shall use the space and equipment for all the purposes necessary to proper administration of his office. No limitations or restrictions are expressed stating how he shall use the space or particularly what he shall do to carry out these purposes. These are matters that must be met by the clerk, who has given bond, under various and varying conditions as they may exist or shall arise in the practical administration of his office, and will greatly depend upon the character and amount of business coming into the office, the amount and character of work necessary to be performed, and the interest and convenience of the public, who are to be served in an orderly manner. As to such matters the clerk necessarily has a broad discretion ; one that is commensurate with the objects to be attained. A partial list of the duties of the clerk of the superior court is set forth in the Civil Code, §§ 4891, 4901 (8). Some of these are specific, and others in general terms refer to duties elsewhere stated in the Code. The general character

and magnitude of these are indicated in § 5995, prescribing fees which the clerks of the superior courts are authorized to charge. One of the most important features of the office of the clerk of the superior court of Fulton County, due to its large population, commercial standing, and volume of transactions in real estate, is provision for examinations of records of titles in his office. How the clerk shall afford this right of examination becomes a practical question which the legislature has not undertaken to control. It is essentially a matter left to his discretion. In affording this opportunity to one he necessarily allows the use of space in his quarters. He may reasonably allow the temporary use of a table and a chair, thus involving the exclusive use of space while the person is so engaged. Or he may temporarily, or subject to his will, allow a number of persons such use of space at the same time. Or he may so allow one person such space where his examination of titles involves many titles or transactions. In all such instances those using the space have only a privilege, and will comply with all reasonable rules and requirements with reference thereto which the clerk shall impose. 1 R. C. L. 97, 98, § 9; Shelby County v. Memphis Abstract Co., 140 Tenn. 74 (203 S. W. 339, L. R. A. 1918E, 539). In view of what has been said, the allegations as to the act of the clerk in allocating the space to the Atlanta Title and Trust Company do not show abuse of discretion or absence of a right to make such allocations of space.

█ In paragraphs 11 and 12 of the petition it is alleged: "Since the year 1925 said Atlanta Title & Trust Company has abstracted, in the manner hereinbefore set forth, approximately 312,000 legal instruments required to be recorded, which affect the titles to real estate in Fulton County, Georgia, for which said Title Company should have paid to the clerk of Fulton superior court $78,000 or more. . . Defendant and his predecessors in office have failed and refused to collect said fees and pay the same into the treasury of Fulton County, Georgia, as required by law." The language, "in the manner hereinbefore set forth," refers to the allegations in paragraph 9(a) of the petition. An examination of those allegations will disclose that they do not allege that the Atlanta Title and Trust Company examined the records with the assistance of the clerk, for which a fee of 25¢ is prescribed, or that the clerk made any examination of the records and an abstract of the

result, for which a fee of $1.50 is prescribed. In these circumstances there is no ground to support the allegation in paragraph 11 that the Title Company should have paid to the clerk of the Fulton superior court "$78,000 or more." In paragraph 15 it is alleged that the Title Company should have paid to the County of Fulton $125.00 per month since January 1, 1925, as rental value of the space which that company had been permitted to use. As to this charge no authority is given to the clerk for making the charge for rent of space in his office. It was his duty to treat the Atlanta Title and Trust Company as he would any other company or individual under similar circumstances. In all instances as indicated above, it is a part of the administrative duty of his office to afford to all members of the public such conveniences as the circumstances may require for making examinations and abstracts of the records in his office, and no provision is made for a separate charge for such conveniences. There is no allegation that the clerk has failed to provide similar conveniences to those extended to the Atlanta Title and Trust Company to other companies or individuals, or that any company or person has been inconvenienced or injured by the privileges extended to the Atlanta Title and Trust Company. The allegations fail to show any ground for making the alleged charge for fees or rent, or for ouster of the Atlanta Title and Trust Company from the office of the clerk. If the allegations were sufficient for any such purpose and it was necessary to institute a suit, the right of action therefor would be in the commissioners of Fulton County, and not in the clerk of the superior court.

■ It follows from what has been said that the judge erred in overruling the general demurrer to the petition.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Hines, J., who dissent.*

GILBERT, J., concurring specially. ■ The Civil Code (1910), § 5995, provides in part: "(a) For inspection of books, when their aid is required," and "(b) For examination of record and abstract of result" specified fees. In my opinion the fees provided are intended as compensation to the clerk for actual services rendered in the inspection of the books and examination of the records and in the making of an abstract. I do not think that merely allowing a person or corporation, without the presence and

participation of the clerk or some deputy in making the inspection or examination and abstract, authorizes the collection of a fee. The mere fact that the clerk affords facilities and opportunities to some persons who themselves gather information from the records is not the aid by the clerk contemplated under the statute.

■ Under the Civil Code (1910), § 401, the control of the court-house and the disposition of its space is by law placed under the authority of the ordinary or the board of county commissioners, where, in the creation of such a board, that duty is taken from the ordinary and given to the county commissioners. *Graham* v. *Merritt,* 165 *Ga.* 489 (141 S. E. 298). In no case has the clerk of the superior court any lawful authority either to permit persons to exclusively occupy a room in the court-house or to dispossess them from such room being occupied by them. Such permission of the clerk has no validity whatever. The court-house is a public building, and as a matter of course the public do not require any permission to enter therein at suitable times and under reasonable regulations. All persons must be allowed equal privileges, both as to access to documents and as to reasonable space within which to transact business incident to the examination of the public records. Civil Code, § 14.

■ I do not consider that the mere stamping of numbers on deeds and mortgages, as alleged to have been the custom of the Title Company, amounts to any substantial hurt or grievance to the individual owning the paper; certainly not to the public, or to any individual having no interest in the document.

■ The court should have sustained the special demurrers to those portions of the petition as indicated, as failing to set out any cause of action or substantial complaint. These, in my opinion, constitute all of the substantial parts of the alleged grievances of the plaintiff. Therefore I am of the opinion that the court should have sustained the general demurrer also. Accordingly I concur in the judgment rendered. I also concur in much that has been said by Mr. Justice Atkinson, but not in all particulars.

HINES, J., dissenting. ■ By the common law no person is entitled to inspect public records, personally or by an agent, or to make copies, abstracts or memoranda therefrom, unless he has such an interest therein as would enable him to maintain or defend an

action for which the record sought furnished evidence or necessary information; and the interest of the person demanding the inspection must be direct and tangible. The person demanding access to an inspection of public records must not only have a direct, tangible interest in the matter to which they relate, but the inspection must be sought for some specific and legitimate purpose. The gratification of mere curiosity or for mere speculative purposes will not entitle one to demand the examination of such records. Rex v. Allgood, 7 T. R. 746, 101 Eng. Rep. (Reprint) 1232; Rex v. Lucas, 10 East, 235, 103 Eng. Rep. (Reprint) 765; Rex v. Merchant Tailors Co., 2 Barn. & Ad. 115, 109 Eng. Rep. (Reprint) 1086; Rex v. Staffordshire, 6 A. & E. 84, 112 Eng. Rep. (Reprint) 33; Brewer v. Watson, 71 Ala. 299 (46 Am. R. 318); State v. McCubrey, 84 Minn. 439 (87 N. W. 1126); Re Caswell, 18 R. I. 835 (29 Atl. 259, 49 Am. St. R. 814, 27 L. R. A. 82); 34 Cyc. 593.

■ The vital question in this case is whether an abstractor, whether an individual or a corporation, can inspect all the public records in the clerk's office, and make abstracts or copies therefrom for the purpose of completing abstracts of title to be used in a private abstract and land-title business carried on by such abstractor or corporation for gain. This question is concluded against the title company in this case, by the decisions of this court in *Buck* v. *Collins,* 51 *Ga.* 391 (supra); and *Land Title Co.* v. *Tanner,* 99 *Ga.* 470 (supra). In both of those cases it was held that this right was not granted by the law in existence at the time these decisions were rendered, and now found in section 14 of the Civil Code of 1910, which declares that "All books kept by any public officer under the laws of this State shall be subject to the inspection of all the citizens of this State, within office hours, every day except Sundays and holidays." This provision has appeared in all the Codes of this State. Code 1863, § 16; Code 1868, § 14; Code 1873, § 14; Code 1882, § 14; 1 Code 1895, § 14; Civil Code (1910), § 14. The origin of this provision is not wholly statutory. The germ thereof is found in the act of December 26, 1831. Acts 1831, p. 90; Cobb's Digest, 195. This provision, in the form in which it now appears, is the product of codification made by the compilers of our first Code.

But it is insisted that under the above decisions an abstractor,

whether an individual or a corporation, can inspect all the record books in the office of the clerk and can make copies of or abstracts from such records, with the consent of the clerk. This contention is based upon the language in those decisions that "A private citizen has not a right, against the consent of the clerk of the superior court and without the payment of his fees, to examine the books of record in his office, for the purpose of making a full abstract of the contents thereof, for publication." It happened that in both of the above cases the proceeding was against the clerk to compel him to permit such inspection and the making of full abstracts of the contents of such records; and the language, "against the consent of the clerk," was used in view of this situation; and the conclusion can not be drawn from this language that the clerk of the superior court possesses the power to permit an abstractor to make copies of, or abstracts from, the records in his office for the purpose of making abstract books for gain by the abstractor. The right granted by this section of the Code does not rest upon the consent of the clerk, but rests upon the statute alone. It is not within the power of the clerk to enlarge the right or privilege conferred by this section of the Code. Prior to the time the clerk of the superior court of Fulton County was put upon a salary, it may be he might have waived any fees coming to him for services rendered to any abstractor under the provisions of this section. What this court held in the decisions cited was that an abstractor had no "right to go into the clerk's office, during office hours, from day to day and from month to month, at his pleasure, copy from the books when they are not in use, at his option, and thus collect material for" the purpose of furnishing abstracts of title for compensation. This court held that it was the evident intention of this section of the Code to provide for examination of these records from time to time, as the ordinary occasions and business of men might require; but that it was not the intention of this provision to permit parties to make examinations of all records in the clerk's office for the purpose of furnishing abstracts, when there was no particular occasion requiring such examination. In *Land Title Co.* v. *Tanner,* supra, the request was made to review and reverse the decision in *Buck* v. *Collins,* supra; but this court, "upon a careful examination of that decision and the reasoning upon which it proceeds," refused to overrule it; and the principle announced in that case was reaffirmed.

In the present case we have been requested to review and overrule the decisions in both of these cases; and after due consideration the writer is of the opinion we should decline to do so. If the title company is permitted to go into the clerk's office with a corps of employees, is permitted to occupy a large space therein for its exclusive use where it maintains a private office, with ten or more desks therein, private lockers, a private telephone, wherein it carries on its private business, and has in said space in the clerk's office twelve or more employees who have complete access to all the records in the clerk's office, then other abstractors should be given the same right; and the office of the clerk would be overrun with abstractors and their employees conducting their private businesses therein, and the legitimate purposes for which the clerk's office is established would be impeded, if not destroyed. I do not think private persons or corporations have any right, under the section of the Code with which we are dealing, to thus transact business in the clerk's office; nor have they any right under this section to make abstracts of all the records in the clerk's office for private gain or otherwise. I do not mean to say that abstractors have not the right to inspect the public records whenever they are called upon to furnish abstracts of title in given cases; and the Atlanta Title & Trust Company has the right to inspect the public records in the clerk's office whenever they are called upon to furnish abstracts of title in given cases, but not otherwise.

The principle announced by this court in *Buck* v. *Collins*, and *Land Title Co.* v. *Tanner*, supra, is in harmony with the decisions of the courts in other jurisdictions, in which it is held that the right to inspect public records is confined to those having some interest in the particular record sought to be inspected or copied, and does not extend to one seeking to do so for mere curiosity or for his own private gain. Webber *v.* Townley, 43 Mich. 534 (5 N. W. 971, 38 Am. R. 213); Bean *v.* People, 7 Colo. 200 (2 Pac. 909); Cormack *v.* Wolcott, 37 Kan. 391 (15 Pac. 245); Scribner *v.* Chase, 27 Ill. App. 36; Brewer *v.* Watson, supra; Randolph *v.* State, 82 Ala. 527 (2 So. 714, 60 Am. R. 761); State *v.* Grimes, 29 Nev. 50 (84 Pac. 1061, 5 L. R. A. (N. S.) 545, 124 Am. St. R. 883); West Jersey Title Co. *v.* Barber, 49 N. J. Eq. 474 (24 Atl. 381); Newton *v.* Fisher, 98 N. C. 20 (3 S. E. 822); Burton *v.* Reynolds, 102 Mich. 55 (60 N. W. 452); State *v.* McCubrey, supra; Belt *v.*

. . .

Prince George's County Abstract Co., 73 Md. 289 (20 Atl. 982, 10 L. R. A. 212) ; 34 Cyc. 593. There are decisions which hold to the contrary of the above. Some are based upon statutes, and others hold that the right to inspect such records confers the right upon abstract companies to search all the records for the purpose of making complete abstracts of title to all property. As illustrative of the cases which hold to the contrary of what is said above, see State v. Rachac, 37 Minn. 372 (35 N. W. 7) ; State v. McMillan, 49 Fla. 243 (33 So. 666, 6 Ann. Cas. 537) ; Shelby County v. Memphis Abstract Co., cited in the majority opinion.

■ From information gained in making abstracts of title to real estate in Fulton County in the manner above set out, the title company causes to be published and circulated, among mortgage-loan brokers and other persons willing to pay therefor, a list showing the names of debtors, the amounts and maturity of mortgages or loans on real estate located in said county, which are furnished thirty to sixty days in advance of the dates of maturity, to permit brokers to solicit renewals of such loans. In my opinion this is a perversion of the purpose for which are kept record-books relating to titles to, and encumbrances on, real property. As this court held in *Buck* v. *Collins,* supra, "The necessities of society, and the protection of those dealing with property, require that these records shall exist. That the title to land, the fact that mortgages or judgments exist, shall be capable of being inquired into by those interested. This is, as we have said, a necessity of society, and this necessity begets the necessity for books and records. The character of one's title, and whether one has mortgages or judgments against him, is thus of *necessity* open to inquiry, and the public, by providing books and records, meets this necessity. Men are required, for the protection of purchasers and to secure fair dealing, to put their titles upon record, and to expose, in some respects, what they may have strong inducements to keep secret. But while the public interest thus provides a mode by which any one may learn the truth upon *inquiry,* it is no part of the public scheme to make this exposure universal. It provides that those who seek the information can get it, but it does not and ought not to flaunt the information its records contain before the public gaze, and thus make a scandal of a public necessity. The object of the record is to furnish to those *needing* it the information the record contains.

That object is attained when its books are open to inquiries as these occasions present themselves. The object sought by the complainant, to wit, to put the substance of these records into print, to be sold and put in the hands of any one who may chance to buy or to borrow, is an extension of this publicity beyond the necessities which make the record justifiable, and is a perversion of the object sought by the requirement to record. It is an unnecessary flaunting of private matters before the public gaze." So I am of the opinion that the inspection of these records for the purpose named is a perversion of the right of inspection; and that inspection for this purpose should be denied. In view of this, the special demurrer to paragraph 14 of the petition is without merit.

■ For several years prior to January 1, 1925, and since then, the title company has been permitted by the clerk to examine and abstract all records in his office, in the following manner: When a person files with the clerk an instrument required to be recorded, which affects the title to real property, the instrument is first indexed by the clerk. It is then delivered into the possession of an employee of this company, and is by such employee removed from that portion of the court-house occupied by the clerk to that portion of the court-house occupied by this company. The employee of the company first causes a serial number used by it to be stamped on such instrument. Then a full abstract of said instrument is made by the company. After said abstract has been made, the possession of the instrument is returned to the clerk, who causes said instrument to be recorded in a record-book, together with the private serial number of the title company on such instrument, and said serial number is made a part of the permanent record of the instrument. After such recording the title company is permitted, before the record is completed on the clerk's indexes, to obtain from the face of the original instrument the book and page number. The employees of the company are given the combination of the lock of the vault in which the record-room is located, are permitted to have keys to the clerk's office, and are permitted to enter said record room and offices at any and all hours of the day and night.

The clerk has no right to permit the title company to affix its serial numbers to instruments which, after being filed and recorded, are to be returned to the owners thereof, and to have such serial numbers recorded along with such instruments. Such instruments

are private documents to which the abstract company has no right to affix its serial numbers; and the clerk has no right to permit this company so to do, and no right to record with these private documents these serial numbers. The clerk has no right to enter on such instruments any entries except the dates of filing and the books and pages in which they are filed, and the dates of their record. The serial numbers of the title company have no place upon such instruments, and no place upon the public records. It is the duty of the clerk "To keep all the books, papers, dockets, and records belonging to their office with care and security." Civil Code (1910), § 4892, par. 10. It is a plain and palpable violation of the duty of the clerk in this respect to give to the employees of the abstract company the combination to the lock of the vault in which are kept the record books in his office, and instruments left with him for record, and to permit such employees at all hours in the day and night, and during the times when he is absent and can not supervise the keeping and handling of such records and documents, to have access to and the handling of such books and records.

■ In paragraph 10 of his petition the plaintiff alleges that this company has made a complete abstract of all records on file in the clerk's office. In paragraph 11 it is alleged that this company since 1925 has abstracted approximately 312,000 legal instruments which affect the titles to real property in this county and which were required to be recorded, for which this company should have paid to the clerk $78,000 or more. In paragraph 12 it is alleged that the defendant and his predecessors in office have failed and refused to collect such fees and pay the same into the treasury of the county, as required by law. The title company demurs to paragraph 11, on the grounds that its allegations are irrelevant; that under no circumstances is the plaintiff entitled to require the clerk to bring any action to recover any amount due to any clerk of Fulton superior court, except himself; that it does not set forth what legal instruments are referred to; that the legal instruments for which the clerk should make claim are not segregated; that it is not shown how the amount of $78,000 is arrived at; and that the allegations of this paragraph are vague and indefinite. The title company demurs to paragraph 12, on the grounds that the clerk could in no event be required to collect any fees except those aris-

ing during his term of office; and that the petition does not show that the defendant clerk is entitled, from any of the facts set forth, to recover any fees whatsoever from the title company. The first question raised by these demurrers is whether the present clerk of Fulton superior court can be required to collect any fees due by the title company for services rendered to it in the inspection of the records in the clerk's office relating to titles to and liens on real property, which accrued during the terms of his predecessors in office and which should have been collected by them and turned over to the County of Fulton. By the act of August 13, 1924 (Acts 1924, p. 87) the clerk of the superior court, the sheriff, the ordinary, the tax-collector, and the tax-receiver of Fulton County were put upon salaries on and after January 1, 1925. The act of 1924 was amended by striking therefrom sections 6 and 7 and by substituting in lieu thereof a new section which reads, in part, as follows: "All fees, costs, percentages, forfeitures, penalties, allowances, and all other perquisites of whatever kind, which are now or may hereafter be allowed by law to be received or collected as compensation for service by any officer herein named, shall be received and collected by all of said officers, and each of them, for the sole use of the county in which they are collected, and shall be held as public moneys belonging to said county, and accounted for and paid over to said county on the first day of each month, at which time a detailed itemized statement shall be made by the officer, under oath, showing such collections and the sources from which collected, and the county treasurer shall keep a separate account showing the sources from which said funds were paid." Acts 1925, p. 159; 12 Park's Code Supp. 1926, § 615(f). Does this provision require a clerk in office to collect and account for fees which accrued during the terms of office of his predecessors, and which were not collected by such officers? By this section it is made the duty of the clerk of Fulton superior court to receive and collect all fees, costs, percentages, forfeitures, penalties, allowances, and all other perquisites of whatever kind which are allowed by law to be received or collected as compensation for services rendered by any officer; and he is to collect and receive the same for the sole use of the county in which they are collected, and the same are to be held by him as public moneys belonging to the county. This is a function of the office, and not of the officer. As a general rule

the duties imposed by law upon public officers are functions and attributes of the office, and not of the officer. They remain although the incumbent dies or is changed, and are to be performed by the incumbent although they may have been left undone by his predecessor in office. State *v.* Holgate, 107 Minn. 71 (119 N. W. 792); State *v.* Johnson, 111 Minn. 10 (126 N. W. 479); State *v.* Brooks-Scanlon Lumber Co., 122 Minn. 400 (142 N. W. 717); Dade County *v.* State, 95 Fla. 465 (116 So. 72); 46 C. J. 1025 (§ 301), C; 22 R. C. L. 458, § 118. So I am of the opinion that it is the duty of the incumbent clerk of Fulton superior court to collect any and all fees which may be due to the County of Fulton for services rendered by himself or his predecessors in office in the inspection of the books when their aid is required.

Before the clerk of Fulton superior court was put upon a salary by the act of 1924, he was entitled to a fee of 25 cents for an inspection of the books in his office when his aid was required; and he was likewise entitled to a fee of $1.50 for the examination of records and abstracts of the result. Civil Code (1910), § 5995. But it is insisted by counsel for the title company that it inspects the books without the aid of the clerk, and that it makes examinations of the records in the clerk's office and abstracts therefrom without the help of the clerk. Under the act of 1924, whatever fees the clerk would be entitled to receive in these matters go to the county. Our law does not give the county any special fees for keeping safely the books and records in the office of the clerk. It did not formerly give the clerk any special fees for rendering this service. The payments which the clerk formerly got for the duty of always being on hand, watching his books, and keeping them ready of access were the fees which, in the ordinary course of business, he would receive for inspections, examinations, and abstracts. The fees which the county now receives on this score are the same as those which the clerk formerly received. The scheme of the title company strikes at the very root of these lawful perquisites which the clerk formerly received and which the county is now entitled to receive. Its purpose is to have in its own office complete copies of the records in the clerk's office; and to be able to furnish abstracts of title or certificates of title for pay to all persons who apply to it therefor. Thus the perquisites which the county would receive from having the clerk inspect these records

and make examinations and abstracts thereof will be greatly diminished, if not finally wiped out entirely. While I concede that the title company is entitled to examine the books in the clerk's office whenever it is called upon to investigate the title to a given piece of property, without the payment to the clerk of the fee prescribed for the inspection of the books in his office where it does not require the aid of the clerk, it does not have the right, under the law as it now stands, to examine all the records in the clerk's office and make abstracts thereof for gain to the hurt and detriment of the county. Besides, the inspections of the books in the clerk's office, made by the title company, are done with the aid of the clerk. In fact the clerk renders extraordinary aid to this company in making its inspections of the books in his office. The clerk permits the title company to maintain its office and employees within the clerk's office to facilitate this work. The clerk delivers to the title company the original instruments left with him for record, as soon as filed, and permits it to examine them, and make abstracts thereof, in preference to others who may desire to do so. He permits the title company to take the custody of original instruments, to remove them to its private quarters for inspection, and to retain them for substantial periods. This gives to the company a great preference over ordinary inspectors of the books in his office. Again, after the instrument is recorded, the clerk permits the title company to inspect anew the original instrument, and from it to take a record of the book and page on which it appears upon the clerk's record. Again, the clerk furnishes to the abstract company the combination of the vault in which these books and records are kept, and permits this company to have in its own possession these books and records, in the absence of the custodian thereof, both in the day and at night. This is rendering to this company extraordinary aid in inspecting these books and records; and in these circumstances the title company is liable to the County of Fulton for the fee of 25 cents for each inspection made by it.

Besides, this section formerly gave to the clerk and now gives to the county a fee of $1.50 for each examination of the records and abstract of the result. The proper construction of this provision is that one who desires an examination of the records and an abstract of the result must pay this fee to the county, although he may be able to make the examination and abstract of the result

without the aid of the clerk. Under the law as it stood before the act of 1924, the clerk was entitled to this fee whenever an examination of the records and an abstract of the result was made, although such party could make the examination and abstract of the result without the aid of the clerk; and under the law as it now stands the party desiring such examination of the records and an abstract of the result must pay such fee to the county. Such party can not now deprive the county of this fee by reason of the fact that he is in a position to make such examination and abstract of the result without calling upon the clerk for aid in so doing. This paragraph of the petition is not demurrable for the reason that it does not set forth what legal instruments are referred to therein, or because the same does not segregate the legal instruments for which the clerk should make claim for the fees due under this section in this matter; and it is not demurrable because it is not shown how the amount of $78,000 is arrived at, or because the allegations of this paragraph are vague and indefinite. This proceeding is not brought to recover any amount from the title company. If it were, it should set forth the particulars which the demurrer claims should be therein. It is not a suit against the title company for an accounting. It is a proceeding against the clerk to require him to institute a suit against the title company for accounting. In a proceeding to obtain an accounting the plaintiff is not obliged to set out an itemized statement showing the amounts claimed by him, or to aver how much is due him upon an accounting; but all the petitioner in such a proceeding has to aver are facts sufficient to indicate that something will be found to be due him by the defendant. *Gould* v. *Barrow,* 117 *Ga.* 458 (43 S. E. 702) ; *Smith* v. *Hancock,* 163 *Ga.* 222 (136 S. E. 52).

■ Paragraph 13 of the petition alleges that the defendant has permitted the title company to occupy a large space in the clerk's office for its exclusive use, and that this company in such space maintains a private office in which it has ten or more desks, private lockers, a private telephone, where it carries on its private business, and maintains in said space twelve or more employees who have complete access to all portions of the clerk's office. In paragraph 15 it is alleged that the title company has been permitted to use the public property of Fulton County, of the rental value of $125 per month, since January 1, 1925, without paying the county any-

thing for its use. In paragraph 16 it is alleged that the clerk is illegally permitting the title company to occupy space in the Fulton County court-house, which neither the clerk nor any one else has the right to permit any private individual or corporation to do. The title company demurs specially to paragraph 13, upon the grounds that (a) the use of the space allocated by the clerk to it is a matter discretionary with that officer, and it is for him to determine in his discretion who may enter in the clerk's office, and the use that such persons so entering may make of the space in said office, or of the records therein; (b) that if the clerk allows the title company to use any space in his office for which payment should be made, the right is vested in the county commissioners to either lessen the space allocated to the clerk or to demand such payment; (c) that the discretion thus vested in the clerk can not be controlled by mandamus; and (d) that the allegations in said paragraph do not show any reason why the privileges granted to the title company should not be permitted by the clerk. The title company specially demurs to paragraph 15, upon the grounds that the allegations therein do not show any right on the part of the clerk to make any charge for the space in his office; that the law does not give the clerk the power to make a charge therefor; and that if there is any right to make a collection therefor, such right is in the county commissioners. The title company specially demurs to paragraph 16, on the grounds that the office of the clerk is a public office, whose records are necessarily open to public examination; that if there is any right to prevent the title company from using space in that office, provided the clerk consents thereto, such right is in the county commissioners; and that, the clerk having the discretion in this matter, no mandamus can issue against him to control his discretion.

As I construe the present proceeding it is not brought to compel the clerk to bring any action against the title company to recover any rent for the space occupied by it in the clerk's office. It is true that paragraph 15 alleges that the title company has been using space in the clerk's office, of the rental value of $125 per month, since January 1, 1925, without paying the county anything therefor. The petition does not allege that the title company is due this rental to the county; and the petition does not specifically pray for a mandamus requiring the clerk to sue therefor. It is

likewise true that the first prayer of the petition is that the clerk show cause why he should not be compelled to institute appropriate proceeding against this company to recover all fees and money due the county as set out above, and to require in said proceeding an accounting by this company in order that the amount due by it may be determined. I do not construe this ground of the prayer of the petition to be for mandamus requiring the clerk to institute a proceeding against the title company to recover the rental value of the space occupied by it. The allegation in paragraph 15 as to the rental value of the space occupied by the company is alleged, as I construe it, to show the illegal occupancy of space in the clerk's office by the title company; and this allegation is made as one of the reasons why a mandamus should be granted to compel the clerk to take the necessary steps to dispossess this company from the space occupied by it in the clerk's office in the court-house. Under this construction it is not necessary to determine in whom the right is vested to sue for the rental value of the space occupied by the title company, as the petition in this case is not brought to recover such rental value. As we have seen, the prayer is to dispossess the title company from the space and office which it has rigged up in the clerk's office for the purpose of carrying on therein private business for its private gain; and as the right to occupy this space and office is claimed upon the ground that it is one granted by the clerk, and as we have seen that the clerk has no such right, the petition is properly brought for a mandamus to compel the clerk to dispossess the title company.

■ The title company further demurs on the ground that there is a misjoinder of causes of action, in that the petition seeks to compel the clerk not to permit the title company to occupy space in his office, and to compel him to collect charges from that company for inspection of the books in his office. Misjoinder of causes of action is a ground of demurrer. Civil Code (1910), § 5631. Separate and distinct rights, whether of one person or of several persons respectively, can not be joined for the purpose of their enforcement in one mandamus proceeding, whether the different duties rest on one person or on several persons respectively. While this is true, the court may in one proceeding enforce the performance of separate but co-operative acts required by law to be done by an official in performance of his duty. So where the several

grievances complained of are analogous, where the remedy sought is identical, and where the facts have been alleged in a single count or cause of action, the petition is not demurrable on the ground that separate causes of action are improperly joined. Where one of the rights sought to be enforced is a necessary incident of the other, it has been held that no obstacle exists to the granting of complete relief in one proceeding. People v. Coffin, 279 Ill. 401 (117 N. E. 85) ; 38 C. J. 882 (§ 598), f. In this case the rights sought to be enforced are analogous. The remedy sought is identical. The facts have been averred in a single cause of action. One of the rights sought to be enforced is a necessary incident of the other. The controlling purpose of the petition is to prevent the clerk from permitting the title company to carry on its private business for gain in the clerk's office, to prevent it from examining all of the records and books therein pertaining to the title to real estate and encumbrances thereon, and to require the clerk to collect from the title company fees past due by it to the county. The rights are analogous.

■ In the opinion of the majority it is said that mandamus issues to "compel performance of specific acts where the duty is clear and well defined, and when no element of discretion is involved in the performance." In support of this the case of *Patterson* v. *Taylor, 98 Ga.* 646 (supra), is cited. I have no quarrel with that decision. It is again urged that "The remedy of mandamus is essential to compel performance." In support of this doctrine the majority cite *Jackson* v. *Cochran, 134 Ga.* 396, and *Bahnsen* v. *Young, 159 Ga.* 256 (supra). With this doctrine I have no quarrel. Again, it is stated that mandamus "is not to prevent specific acts." The majority cite other authorities to sustain the proposition that "Mandamus is strictly a legal remedy to compel action. . . It is very generally held that mandamus is not the proper remedy where the relator does not ask that the defendant be compelled to do an act, but demands on the contrary that he be forbidden to do certain acts." In support of this doctrine the majority cite 38 C. J. 545 (§ 12), Southern Leasing Co. v. Williams, 160 N. Y. Supp. 440, and State v. Connersville Natural Gas Co., 162 Ind. 563 (supra). Evidently the majority have overlooked the prayers of the petition. The first prayer is that the clerk show cause why "he should not be compelled to institute

appropriate proceedings against" the title company "to recover all fees and monies due the County of Fulton, as hereinbefore set forth, and to require in said proceeding an accounting by said company in order that the amount due said county may be determined." Here the prayer is to compel the clerk to do something, and not to prevent him from doing something. The second prayer is that the clerk show cause why "he should not be compelled to take the necessary steps to dispossess" the title company "from the space occupied by" it "in said court-house." Here the prayer is for action, and not to prevent the clerk from acting. The third prayer is that the clerk show cause why "he should not be compelled to stop the practice" of the title company "in examining, abstracting, and mutilating the records in his office in the manner and method set forth in this petition." Here the prayer is to compel the clerk to act. It does not seek to prevent him from acting. The next prayer is for the grant of a mandamus absolute. This prayer is not to prevent the clerk from acting; but to compel him to act in doing the things specified in the prayers above recited. This is not seeking mandamus to prevent the clerk from acting, but to compel him to act. There is thus not a single prayer in the complaint which seeks to prevent the clerk from doing any act. On the contrary, all the prayers seek to compel him to act, and to discharge duties which are imposed upon him by the law. In the portion of the opinion of the majority in which they deal with this question, they have entirely overlooked or wholly disregarded the prayers of the petition. There is not a syllable in the petition or in its prayers which seeks to prevent the clerk from doing anything. Its sole purpose is to compel him to act, as shown above.

■ For the reasons above stated I feel compelled to dissent from the opinion of the majority. The true law of this case supports the action of the petitioner. The law requires that the ordinary shall designate the room or rooms in the court-house to be occupied by the clerk of the superior court. Civil Code (1910), § 401. Where there are county commissioners in a county, as in Fulton County, this duty devolves upon these officers. Space in the court-house is thus designated for occupancy by the clerk for the purpose of transacting the public business incident to this office. The clerk is wholly without authority to permit individuals or corporations

to occupy space therein for the purpose of conducting private business for private gain. In this case the clerk of the superior court is permitting the title company to occupy a large space in his office for its exclusive use, where it maintains a private office, in which it has ten or more desks, private lockers, a private telephone, wherein it carries on its private business, and wherein it has twelve or more employees, who have access to all offices in the clerk's office. The petition in this case was brought to compel the clerk to eject the title company from this space and office which it maintains in the clerk's office. In the court-house in Fulton County there is a fireproof vault in which the public records must be placed at night or when the clerk is absent. Civil Code (1910), § 400. The employees of the title company are given the combination of the vault by which the record-room is locked, and are permitted to enter said record-room and offices at any and all hours of the day and night. It is the duty of the clerk of the superior court "To keep all the books, papers, dockets, and records belonging to their office with care and security." Civil Code (1910), § 4892, par. 10. There could not be a more flagrant violation of official duty than that set out above. The clerk violates his sworn duty when he gives to the employees of individuals or corporations the combination to the vault in which public records of his office are kept, when he permits such employees to have keys to his offices, and permits them to enter the record-room and his offices at any and all hours of the day and night, especially when he is absent. By doing this he does not keep the books, papers, dockets, and records belonging to his office with care and diligence. It is the duty of that officer, instead of granting these privileges, to refuse them. In this matter he has no discretion. The present suit was brought to make him discharge his duties in these matters, and to require him to abandon the practices complained of.

When a person files with the clerk an instrument required to be recorded, which affects the title to real property, the instrument is first indexed by the clerk, is then delivered to the possession of an employee of the title company, and is by such employee removed from that portion of the court-house occupied by the clerk to that portion of the court-house occupied by this company. The employee first causes a serial number used by the title company to be stamped on such instrument, then such employee makes a full

abstract of the instrument for the company, and after such abstract has been made the instrument is returned to the clerk, who causes the instrument to be recorded, together with the private serial number of the title company on such instrument. Said serial number is made a part of the permanent record of the instrument. After the record of the instrument an employee of the title company is permitted, before the record is completed on the clerk's indexes, to obtain from the face of the original instrument the book and page number of the record. This practice is pursued with regard to every instrument affecting the title to real estate. The title company is thus the first person permitted to have possession and to make examinations of all such instruments filed for record in the clerk's office, whether it may have occasion to examine the title in any given case in which it is employed so to do. It is thus given a very valuable privilege to the exclusion of all other members of the public, including other persons and corporations engaged in making abstracts from the records; and thus an actual monopoly in this matter is given to the title company. The present proceeding was brought to compel the clerk to abandon this practice and to grant to others equal rights with the title company in the premises. It does seem to me if there ever was a complaint which set forth a clear, legal, and just cause of action, the present suit is such. It seems to me that it is a patent miscarriage of right to reverse the judgment of the able trial judge overruling the demurrer of the defendant to the petition in this case.